**James G. CARIDDI, Appellant,**

v.

**KANSAS CITY CHIEFS FOOTBALL CLUB, INC., and Robert M. Wachter, Appellees.**

**No. 77–1546.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 30, 1977.

Decided Dec. 29, 1977.

Sandra C. Midkiff and William H. Pickett, Kansas City, Mo., on brief for appellant.

William J. Burrell and Thomas A. Sweeny, Kansas City, Mo., on brief for appellees.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

James G. Cariddi, a former employee of the Kansas City Chiefs Football Club, brought this action alleging that he was discriminated against in his employment on the basis of his national origin. We hold that the trial court's finding that Cariddi was not discriminated against because of his national origin was not clearly erroneous and affirm.

Cariddi is employed as an assistant principal in the Kansas City school system. In the summer of 1972, he was hired to supervise ticket takers for the 1972 season by Robert Wachter, the stadium director for the Kansas City Chiefs. He returned again for the 1973 season. On occasion, Wachter referred to Cariddi as a "dago" and to other Italian-American employees as the "Mafia." The trial court found that Cariddi was terminated in September, 1973, for insubordination and for failure to comply with the Kansas City Chiefs' policy with respect to the use of the press box on game days.

Cariddi contends, on appeal, that the trial court erred as a matter of law in finding that the use of ethnic slurs by Cariddi's supervisor did not amount to a violation of Title VII. 42 U.S.C. § 2000e et seq. We cannot agree that the trial court so erred. It explicitly and correctly recognized that derogatory comments could be so excessive and opprobrious as to constitute an unlawful employment practice under Title VII. See Rogers v. Equal Employment Opportunity Com'n, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). However, it went on to find that the derogatory ethnic comments made by Cariddi's superior were part of casual conversation and did not rise to the level necessary to constitute a violation of Title VII. Moreover, it found that the Kansas City Chiefs did not discriminate against Italian-Americans. Two of the six supervisors employed by the Kansas City Chiefs were Italian-Americans. Eighteen of the individuals hired as ticket takers by Wachter on Cariddi's recommendation were Italian-Americans. Cariddi's wife and daughter were also employed by the Kansas City Chiefs. We have carefully reviewed the record and do not find these factual findings to be clearly erroneous.

The second contention Cariddi raises is that the trial court erred in refusing to permit him to proceed under 42 U.S.C. § 1981 with his claim of discrimination on the basis of Italian national origin. We need not reach this issue since we have held that Cariddi was not discriminated against on the basis of his national origin.

We note only that there is a division of authority among the courts that have considered the question of whether claims of discrimination on the basis of national origin are actionable under § 1981. Compare, e. g., Budinsky v. Corning Glass Works, 425 F.Supp. 786 (W.D.Pa.1977); Kurylas v. U. S. Department of Agriculture, 373 F.Supp. 1072 (D.D.C.1974), aff'd, 169 U.S.App.D.C. 58, 514 F.2d 894 (1975); Kerckhoff v. Kerckhoff, 369 F.Supp. 1165 (E.D.Mo.1974); Marshall v. Plumbers and Steamfitters Local Union 60, 343 F.Supp. 70 (E.D.La. 1972); Williams v. San Francisco United School District, 340 F.Supp. 438 (N.D.Calif. 1972); Schetter v. Heim, 300 F.Supp. 1070 (E.D.Wis.1969), with, e. g., Ortega v. Merit Ins. Co., 433 F.Supp. 135 (N.D.Ill.1977); Miranda v. Clothing Workers, Local 208, 10 FEP Cases 557 (D.N.J.1974); Sabala v. Western Gillette, Inc., 362 F.Supp. 1142 (S.D.Tex.1973), aff'd in part rev'd in part, 516 F.2d 1251 (5th Cir. 1975). The cases extending the coverage of § 1981 to include claims based upon national origin have involved claims of discrimination by Hispanic, Puerto Rican, Cuban and Mexican individuals. A number of courts have permitted Hispanic individuals to sue under § 1981 but have held that their claims of national origin discrimination are actionable under § 1981 only to the extent they are motivated by or indistinguishable from racial discrimination. Enriquez v. Honeywell, Inc., 431 F.Supp. 901 (W.D.Okla.1977); Martinez v. Hazelton Research Animals, Inc., 430 F.Supp. 186 (D.Md.1977); Gomez v. Pima County, 426 F.Supp. 816 (D.Ariz.1976); Cubas v. Rapid Am. Corp., Inc., 420 F.Supp. 663 (E.D.Pa.1976); Maldonado v. Broadcast Plaza, Inc., 10 FEP Cases 839 (D.Conn. 1974).

Neither the United States Supreme Court nor the Eighth Circuit have directly considered the circumstances under which claims of discrimination on the basis of national origin may be actionable under § 1981. The Supreme Court recently held that "§ 1981 is applicable to racial discrimination in private employment against white persons." McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 287 [96 S.Ct. 2574, 2581, 49 L.Ed.2d 493] (1976) (emphasis added). It is also clear that § 1981 has been extended to protect aliens as well as citizens. See Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). In the context of a discussion of whether Congress intended Title VII to preempt § 1981, the Eighth Circuit noted that § 1981 "is by its very terms limited to racial discrimination." Brady v. Bristol-Meyers, Inc., 459 F.2d 621, 623 (8th Cir. 1972).

We leave the resolution of the question as to the application of § 1981 to claims of national origin discrimination to the appropriate case.

Affirmed.