505 F.Supp. 761 (1980)
Willie SPEARMON, Plaintiff,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.
No. 78-1402C(1).
United States District Court, E. D. Missouri, E. D.
December 23, 1980.
*762 Doris Gregory Black, St. Louis, Mo., Carl W. Bussey, Kansas City, Mo., for plaintiff.
James A. Daugherty, Thad Hollie, Jr., St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, Chief Judge.
This matter is before the Court for a decision following a three day bench trial held January 21 through 23, 1980. This is an action for back pay, punitive damages and injunctive relief brought pursuant to Title VII of the Civil Rights Act of 1964 as *763 amended, 42 U.S.C. § 2000e et seq., 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1981. Plaintiff, a black male, alleges he was discriminated against because of his race through defendant's treatment of plaintiff during his term of employment. Federal jurisdiction is invoked by the plaintiff under the provisions of 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1981. The Equal Employment Opportunity Commission notified plaintiff of his right to sue on October 3, 1978 after the Commission found no reasonable cause to believe plaintiff's allegations were true.
After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

Findings of Fact
1. Plaintiff was employed by defendant on March 1, 1977, pursuant to defendant's General Management Development (GMD) program and was put to work as a management employee, titled Accounting Office Supervisor and was subsequently assigned the duties of a Computer Supervisor in defendant's Computer Data Center.
2. The GMD program is a high risk hiring program whereby defendant recruits college graduates with significant academic credentials, extracurricular activities, or outside experience in employment. Employees hired under the GMD program begin at salaries determined by their academic major, academic standing, extracurricular activities and employment record. Subsequent increases in the recruit's salary are determined in accordance with his or her performance rating. Once hired, GMD employees face the same evaluation processes as do other management employees.
3. Plaintiff expressed a desire to work in an area consistent with his educational background prior to his period of employment with defendant, but opportunities with defendant's company in this field, economics, were extremely limited.
4. There are four avenues for an individual to become a management employee with the defendant, to-wit: (1) the GMD program; (2) possession of a high degree of technical skills; (3) a lateral transfer from another company; and (4) promotion from within the defendant company. Salary increases for management employees of defendant are based upon management evaluations in accordance with his or her performance rating.
5. Plaintiff was evaluated and notified of his management potential in April, 1978, and received a less than desirable rating on a portion of the report concerning his effectiveness with other work groups. Over all, plaintiff rated as an acceptable employee, and as having potential for advancement. The evaluatory process utilized by defendant company is in part subjective.
6. Beyond his low rating for effectiveness in working with others, in January, 1979, plaintiff had other difficulties on the job. Plaintiff improperly cancelled a computer run when said run was a priority job and did so notwithstanding a co-worker's advice that higher management had directed the computer run. Having learned of plaintiff's act, a higher level manager touched the plaintiff on the arm and uttered a racial slur which he later apologized for.
7. Plaintiff considered himself a model employee and consistently expressed impatience with his own advancement with defendant company.
8. Plaintiff received an evaluation of his job performances for purposes of a possible pay increase in March, 1979, and was rated as a satisfactory employee. He received all employee benefits to which he was entitled, as well as several wage increases. His initial salary was $14,040.00 per annum, and at the time he voluntarily resigned, May 1, 1979, he was earning $18,540.00 per annum.
*764 9. Throughout the course of his employment, while working in an environment in which cooperation and coordination with co-workers was vital to his effectiveness as an employee, plaintiff experienced difficulty in dealing with his peers, co-workers and supervisors, both black and white.
10. There were instances of plaintiff not attending meetings with supervisions, the sole purpose of which were to be the resolution of plaintiff's work-related difficulties.

Conclusions of Law
Plaintiff has two potential avenues of recovery in pursuing his Title VII claim. He is entitled recovery if he establishes either disparate treatment to, or disparate impact upon, members of a protected group. Furnco Const. Co. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). For the reasons stated below, plaintiff Spearmon has failed to present credible evidence which would support a finding in his favor on either theory.
Plaintiff's qualifications for promotion with defendant company were not established and plaintiff's upper level managers were not shown to have a predisposition towards discrimination against either the plaintiff or other black management employees. Plaintiff's claim for disparate treatment fails for lack of these two essential elements. Pettit v. United States, 488 F.2d 1026, 1033, 203 Ct.Cl. 207 (1973); Detroit Police Officers Association v. Young, 446 F.Supp. 979 (E.D.Mich.1978).
Although plaintiff performed the tasks expected of him with competence, and received wage increases commensurate with that degree of competence, the plaintiff consistently demonstrated little ability to either work and cooperate with his co-employees or to communicate and resolve problems with his supervisors. Plaintiff was rated over all as a satisfactory employee and as having the potential for promotion to the next higher level of employment. Also, the level of management personnel responsible for performance ratings for management potential evaluations were demonstrated to have no predisposition towards discrimination against blacks. The method of evaluation and the information the evaluations were based upon were the same for plaintiff and all other employees in his position.
Further, the process of evaluation was the same in both formulation and application to black and white employees. The record before this Court is free of any evidence that white employees fared better than did black employees when it came to this process of evaluation of managerial potential. Both black and white employees were evaluated favorably and allowed promotions, while other black and white employees were disfavorably reviewed and promotions withheld from such. No statistical information or other credible evidence was proffered to establish that promotions were made on preferential basis for whites.
Plaintiff suggests that one parameter in evaluating management potential in Southwestern Bell employeeseffectiveness with other work groupswas used arbitrarily to discriminate against black employees in general and plaintiff in particular. Although purely objective criteria for evaluating employees are not unlawful per se, they may well contain built-in biases or become a means of latent discrimination. Nevertheless, decisions about hiring and promotion concerning supervisory and managerial positions cannot realistically be made using objective standards alone. Rogers v. International Paper Company, 510 F.2d 1340, 1345 (8th Cir. 1975). By plaintiff's own admission, and the testimony of other management employees, the ability to work well with other groups was a skill critical to the success of management personnel in the area plaintiff was employed. After scrutinizing the essence of this criteria as well as its application to black employees at Southwestern Bell, this Court is certain that such evaluation is legitimate if not crucial to the business ends of defendant. Thompson v. McDonnell Douglas Corp., 416 F.Supp. 972 (1976), aff'd 552 F.2d 220 (8th Cir. 1977). Further, a significant correlation exists between an *765 employee's effectiveness with other work groups and his or her potential as an upper level management employee. Rogers, supra.
Plaintiff has not linked this use of subjective criteria with any showing of a disproportionate impact upon blacks and in fact, defendant came forth with several black employee witnesses who seemed to have benefited from this system of evaluation. This process also was brought to the attention of employees before the evaluations were made, the criteria for evaluations were written, the ratings were discussed with employees, and the ratings were later reviewed by higher level supervisors. These factors indicate that even though these evaluations were necessary in terms of defendant company's proper analysis of employee ability, steps were taken so as to minimize the potential for arbitrary or discriminatory decisions by decentralizing review of such evaluations and actively inviting the participation and review by the particular employee involved. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
Plaintiff also alleges that he was the victim of an offensive touching and a racial slur in connection with a disagreement with a supervising manager arising out of plaintiff's erasure of a computer program during its run. However, it is clear that this was an isolated incident for which the management employee has apologized, and it cannot be said that this lone act represented any part of a consistent plan or scheme to harass the plaintiff. Further, this is not the type of incident which Title VII was designed to protect against. Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87 (8th Cir. 1977). Pressure to contribute to the United Way as alleged by plaintiff also falls short of making out a Title VII claim and in no way represents continuing course of action by defendant.
It is clear that plaintiff bears the burden of proof to demonstrate by competent evidence that defendant's actions were racially motivated and constituted artificial, arbitrary and unnecessary barriers to employment. Once plaintiff has established the prima facie case the burden shifts to the defendant to show rational business justification for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and Garrett v. Mobil Oil Co., 531 F.2d 892 (8th Cir. 1976). Plaintiff's evidence on both the disparate impact and disparate treatment theories did not rise to the level of making such a case and assuming, arguendo, that plaintiff had made out such a case, the defendant amply demonstrated a legitimate business justification for its management evaluation process, its evaluation of plaintiff, and its over all treatment of plaintiff. The entire record before this Court is free from evidence of any acts of discrimination to plaintiff or other members of his race, and the record supports the evaluation of his management potential and defendant's acts in connection therewith.
For the above stated reasons it is proper that this Court enter its judgment in favor of the defendant Southwestern Bell Telephone Company on plaintiff William Spearmon's claim.