**Willie SPEARMON, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 81–1091.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1981.

Decided Oct. 30, 1981.

---

Carl W. Bussey, argued, Bussey & Wright, Kansas City, Mo., for appellant.

James A. Daugherty, St. Louis, Mo., for appellee.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

Plaintiff appeals the judgment of the district court, 505 F.Supp. 761,[1] denying his claim for back pay, punitive damages, and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. We affirm.

Plaintiff Willie Spearmon, a black male, was employed on March 1, 1977 by defendant Southwestern Bell Telephone Company in the General Management Development Program (GMD), a high-risk hiring program designed to bring minorities into management positions. Through the GMD pro-

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the     Eastern District of Missouri.

gram, defendant recruits college graduates with significant academic credentials, extracurricular activities, or outside experience in employment. These factors also form the basis for determining initial salaries of GMD employees, although subsequent evaluations for purposes of salary and promotion are based on the same criteria used to evaluate other employees.

Plaintiff was employed in the first-level position of Accounting Office Supervisor and was assigned to the St. Louis Computer Data Center. In April, 1978 he received a routine management potential evaluation based in part on subjective criteria. Although rated overall as an acceptable employee with advancement potential, plaintiff was displeased with the portion of the evaluation giving him a less than favorable rating with respect to his relationship and effectiveness with other work groups.

In July, 1978 plaintiff filed a complaint with the EEOC based in part on the management potential evaluation and on an alleged physical assault by a supervisor. This latter charge arose from an incident that occurred after plaintiff had cancelled a priority computer operation against the advice of a co-worker that higher management had directed the operation. Plaintiff alleged that upon learning of the cancellation, a higher level manager touched plaintiff on the arm and uttered a racial slur.

The EEOC found no probable cause and advised plaintiff of his right to sue. He filed the present complaint on December 12, 1978, alleging that he had been subjected to disparate treatment with respect to compensation, terms, conditions, and privileges of employment in violation of Title VII and § 1981. Following a three-day bench trial, judgment was entered for defendant on December 23, 1980. The district court concluded that plaintiff had failed to establish a prima facie case of either disparate treatment, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or disparate impact, see *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), or, alternatively, that if he had made out such a case,

defendant had effectively rebutted it. *Texas Dept. of Consumer Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, supra.

Plaintiff first contends that the trial court erred in denying his motions to compel answers. His first set of nineteen interrogatories was filed on April 5, 1979. Defendant objected to interrogatories 4, 5, 10, 11 and 18, whereupon plaintiff filed a reply and moved the court to compel defendant to answer. The record indicates that this motion was never specifically addressed by the district court. On June 1, plaintiff filed a motion to compel answers to interrogatories 13(c) and 16(a), to which defendant had neither objected nor responded. The court denied the motion with respect to 16(a), which requested the name, race, sex, and salary of each employee in the St. Louis Computer Data Center, but granted the motion with respect to 13(c), which requested starting salary, wage range, and present salary of all accounting office supervisors from 1975 to 1979. On August 15, plaintiff filed a third motion to compel, alleging that defendant had failed to answer 13(c) as ordered by the court. This last motion was denied on the ground that plaintiff had received the requested information in answer to his second set of interrogatories.

■ Plaintiff stated at oral argument that the only information not received was that requested in interrogatories 13(c) and 16(a). Therefore, we need not address the district court's apparent failure to rule on plaintiff's first motion which was not directed to these two interrogatories. With respect to 13(c), it appears from the record and from correspondence attached to defendant's brief that defendant substantially complied with the district court's order by furnishing plaintiff with individual salary data for all GMD accounting office supervisors and with the salary range for non-GMD accounting office supervisors. We find nothing to indicate that the trial court abused its discretion in its rulings on plaintiff's motions to compel answers to 13(c) and 16(a), or that plaintiff was prejudiced

by the lack of individual salary data for non-GMD accounting office supervisors or from any lack of information sought by interrogatory 16(a).

■ Plaintiff's second contention is that the trial court erred in finding that if plaintiff had established a prima facie case of disparate treatment or disparate impact, defendant had successfully rebutted it. In support of his claim that his lack of advancement was due to racial discrimination, plaintiff alleges that the negative evaluation of his effectiveness in working with others resulted from the alleged assault by the supervisor after plaintiff cancelled the priority computer operation. There is ample evidence, however, to support the district court's conclusion that the incident, if it occurred as plaintiff alleges, was an unfortunate but isolated occurrence and not supportive of a Title VII violation charge. *Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87 (8th Cir. 1977). The evaluation was further justified by the testimony of several witnesses that plaintiff had difficulties cooperating with co-workers and communicating with supervisors. Plaintiff himself agreed that this skill was critical to the success of a management employee. In addition, it appears from the record that two years was the average period for promotion of GMD employees, both black and white, to a second-level supervisor position. Since plaintiff resigned just over two years after he began his employment, his dissatisfaction with his advancement was perhaps premature.

Nor do we find support for plaintiff's other claims of disparate treatment, particularly in view of plaintiff's own concession at trial that he received all employee benefits to which he was entitled and several wage increases from his initial salary of $14,040 to $18,540 at the time of his resignation.

Plaintiff also argues that defendant's evaluation system operated to discriminate against blacks, but the record fully supports the district court's finding that defendant's policies were structured to minimize any potential for discriminatory application.

For example, evaluations were made by several supervisors and were reviewed with the employees. Both blacks and whites received evaluations similar to plaintiff's and both blacks and whites were promoted and received pay increases. The trial court found no credible evidence indicating disparate impact on black employees and noted that in fact several blacks had apparently benefitted from defendant's system of evaluation. We conclude that the trial court's findings are not clearly erroneous and we agree with the court's conclusion that if plaintiff established a prima facie case, defendant effectively rebutted it by demonstrating "a legitimate business justification for its management evaluation process, its evaluation of plaintiff, and its overall treatment of plaintiff." Furthermore, plaintiff made no showing that defendant's justification was a pretext for discrimination, *see Texas Dept. of Consumer Affairs v. Burdine, supra,* nor do we find any basis to support any such argument.

■ Plaintiff's final contentions concern the failure of the district court to address his § 1981 claim and his claim of constructive discharge. We find, however, that to the extent plaintiff's claim of constructive discharge is asserted as a separate claim apart from plaintiff's general claim of discriminatory treatment, it is not properly before this court, under either Title VII or § 1981.

The record indicates that plaintiff resigned in May, 1979, five months after the present complaint was filed. Plaintiff apparently made no attempt to amend his pleadings and the first allusion to a possible claim of constructive discharge was a single statement in his post-trial proposed findings of fact that he was forced to resign. On appeal, plaintiff's argument in support of his claim of constructive discharge consists of allegations also offered in support of his general claim of discriminatory treatment. We thus conclude that to the extent plaintiff's claim of discriminatory treatment and constructive discharge are coextensive, the district court's determination of the former effectively operated to resolve the latter.

To the extent, if any, that plaintiff's claims might not be coextensive, his claim of constructive discharge was not fairly presented to the trial court as a separate issue, and we will not consider it for the first time on appeal. *United States v. Frank*, 587 F.2d 924, 928–29 (8th Cir. 1978).

For the foregoing reasons, the judgment of the district court is affirmed.