Shamsiddin MATEEN, Plaintiff,

v.

CONNECTICUT TRANSIT, Defendant.

Civ. A. No. N–81–428.

United States District Court,
D. Connecticut.

Oct. 5, 1982.

Shamsiddin Mateen, pro se.

John C. Yavis, Jr., Barry J. Waters, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In this *pro se* civil rights action, tried to the Court, plaintiff alleges that the defendant, Connecticut Transit, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by discriminating against him in employment on the basis of race and religion. For reasons set forth in two opinions, filed December 2, 1981 and May 6, 1982, this Court denied the plaintiff's motions for the appointment of counsel to represent him. At trial the plaintiff was fully heard and submitted a lengthy written statement concerning his claims of discrimination. The defendant called three witnesses in rebuttal.

### I

The plaintiff is an intelligent, articulate 37-year-old Black Muslim, who holds his religious beliefs with undisputed sincerity. Prior to 1980 he was employed as a postal worker, a fireman, and a maintenance man for the Housing Authority of the City of New Haven.

On December 18, 1979, the plaintiff filed an application with the defendant for the position of motor coach operator. Under the procedures for attaining permanent employment, an applicant first had to undergo 30 days of supervised training to learn how to drive a bus and to become familiar with the scheduled travel routes. At the end of the training period, the trainee was required to take a "Pre-Qualification Test." This test, which usually took about four hours to complete, consisted of 24 written questions and an oral interview. If the trainee passed the examination, he was placed on a probationary status for 90 days. Assuming no cause for discharge intervened, the person was then assigned a regular job as a bus driver for the company.

On May 5, 1980, the plaintiff was hired by defendant as an operator-trainee. Two weeks later, as a result of plaintiff's negligent conduct, the bus he was operating was involved in an accident. In the accident report filed by the plaintiff, he admitted he misjudged the distance between a telephone pole and the side of the bus he was driving, thereby causing damage to the vehicle. The plaintiff was suspended from duty for two days and given further special training. Thereafter, reports submitted by plaintiff's instructors differed concerning his competence: some indicated he was qualified, others were critical and stated he was not temperamentally suited for the position. One of the most derogatory evaluations was submitted by a black instructor.

On June 2, 1980, the plaintiff completed his training period and was scheduled to take his "Pre-Qualification Test" with Mr. Robert Calling, the defendant's training supervisor, on June 4, at 12:30 P.M. On the morning of the test, Mr. Calling notified the plaintiff that the test had to be postponed until the following day because of pressing company business. Mr. Calling explained that the office was short-staffed due to a managers' meeting in another city and that he was assigned to the dispatcher's job for the day. Apparently the plaintiff accepted the message without complaint at the time.

However, at approximately 3:00 P.M. that day, the plaintiff appeared at the company's dispatch office and insisted that Mr. Calling administer the test immediately. When his demand was denied, the plaintiff became abusive, insulting and loud. That

evening Mr. Calling submitted a written report of the incident to Mr. Thomas Whitney, the defendant's division manager.

The following day Mr. Whitney terminated the plaintiff on the ground that the plaintiff's performance, behavior and attitude did not measure up to the standards that the defendant required of its operators.

In the following year, the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission rejected the plaintiff's claims of unlawful discrimination and dismissed his petitions.

The plaintiff is presently employed as a psychiatric aide at the Fairfield Hills Hospital. According to the plaintiff's testimony, he enjoys his work and is a highly regarded member of the hospital's staff.

## II

The relevant statutory provisions in this type of case include Sections 703(a) and 706(g) of the 1964 Civil Rights Act. Section 703(a)(1), 42 U.S.C. § 2000e–2(a)(1) provides: "It shall be an unlawful employment practice for an employer—(1) to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin …." Section 706(g), 42 U.S.C. § 2000e–5(g), in turn, states in relevant part: "No order of the court shall require … reinstatement of an individual … as an employee, or the payment to him of any back pay, if such individual was … discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of [retaliation provisions]."

■ Under the standards enunciated in controlling cases, the plaintiff carries the initial burden of establishing a prima facie case of racial or religious discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). See also *Furnco Constr. Corp. v.*

*Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Knight v. Nassau County Civil Service Comm'n,* 649 F.2d 157, 160 (2 Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981). A prima facie case is "simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Constr. Corp. v. Waters,* 438 U.S. at 579–580, 98 S.Ct. at 2950–2951. See also *Texas Dep't of Community Affairs v. Brudine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ If the plaintiff establishes a prima facie case, the burden then shifts to the employer to demonstrate legitimate nondiscriminatory reasons for its action. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014 (2 Cir.1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons proffered by the employer were pretextual and unworthy of belief. *Id.* at 256, 101 S.Ct. at 1095; *Lieberman v. Gant,* 630 F.2d 60, 65 (2 Cir.1980).

## III

Applying these principles to the credible facts in the instant matter, it seems clear that the plaintiff has failed to establish a case of disparate treatment. The main thrust of the plaintiff's contentions is that he must be considered by the Court to have been a victim of discrimination because he was terminated despite his obvious intelligence and his physical ability to drive a bus, if only given the chance. In addition, he

points to an occasion or two during his employment when white supervisors mispronounced his name. This, he argues, reflects a discriminatory animus on the part of defendant's supervisory agents.

Much more, however, is necessary to establish the causal nexus between these facts and a violation of Title VII. A keen mind and manual dexterity are not the only criteria that management may utilize in determining a person's qualifications for employment. An ability to work well with others, patience, pleasantness, and self-control are permissible factors to be placed on the scale. In view of a bus operator's daily and extensive contact with the public, these personal characteristics are components for the successful performance of the job. Cf. *Spearmon v. Southwestern Bell Tel. Co.,* 505 F.Supp. 761, 764 (E.D.Mo.1980) ("ability to work well with other groups was a skill critical to the success of management personnel in the area plaintiff was employed."), aff'd, 662 F.2d 509 (8 Cir.1981). At trial the plaintiff did not seek to minimize his inability to interact on a personal level with other employees, but rather sought to explain and excuse this failing on the ground that he was frustrated in his attempt to find gainful employment to support his seven children. The absence of a link between management's use of subjective criteria and disparate treatment is fatal to plaintiff's case. Moreover, mispronunciation of plaintiff's name by a single supervising manager hardly represents a consistent plan or scheme on defendant's part to harass the plaintiff. Cf. *Morales v. Dain, Kalman & Quail, Inc.,* 467 F.Supp. 1031, 1040 (D.Minn.1979) (isolated comment by employer should not necessarily be viewed as reflecting discriminatory intent); *Ortiz v. Ciba-Geigy Corp.,* 87 F.R.D. 723, 724–25 (N.D.Ill.1980) (single incident, over 11 years, of name-calling directed at one employee by another employee, which did not result in disciplinary action, did not establish bias based on national origin).

Even assuming the presence of a prima facie case, the substantial proof offered by defendant effectively established that plaintiff was terminated for legitimate non-discriminatory reasons. The plain fact of the matter is that plaintiff, at least at the time of the events in question, was not temperamentally suited for employment with the defendant. There is no question he acted in an abrasive and belligerent manner in his dealings with supervisors and other employees. Negative reports were submitted by both white and black supervisors. These, as well as the plaintiff's unjustifiable refusal to accept a one day postponement of his test, his total lack of respect for his training supervisor, and his outbursts of temper constitute legitimate business justifications for defendant's evaluation process and overall treatment of plaintiff. See, e.g., *Morales v. Dain, Kalman & Quail, Inc.,* 467 F.Supp. 1031 (D.Minn.1979); *Ali v. Southeast Neighborhood House,* 519 F.Supp. 489 (D.D.C.1981).

Finally, any disparate impact claims are quickly deflated by the defendant's EEO data. Those statistics show that over one-half of the defendant's bus drivers are black, and according to the CCHRO investigator (who incidentally had to terminate plaintiff's hearing before her because of his "raving and ranting") the defendant has two Black Muslims in permanent employment.

Accordingly, for the foregoing reasons, judgment will enter in favor of defendant and against the plaintiff.