755 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WILLIAM E. HUNTER, PLAINTIFF-APPELLANT,
v.
LANTECH, INC., DEFENDANT-APPELLEE.
 NO. 83-5562
 United States Court of Appeals, Sixth Circuit.
 1/30/85
 
 ORDER
 BEFORE: CONTIE and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff William Hunter appeals from a district court judgment rendered after a bench trial in favor of defendant Lantech, Inc. Hunter had alleged that Lantech discharged him on the basis of race in violation of title VII of the Civil Rights Act of 1964. For the reasons set forth below, we affirm the judgment of the district court.
 
 
 2
 Lantech is a manufacturing company located in Louisville, Kentucky. Hunter, a black male, was employed as a 'crater,' i.e., he used metal bands to strap products to wooden skids in preparation for shipment. Although Lantech issued Hunter razor blades for cutting the metal bands, Hunter also used a personal pocket knife.
 
 
 3
 The events in question occurred on May 22, 1981. While working, Hunter and fellow employee McGuire discussed the movie 'The Deer Hunter,' which involved the Vietnam war and which had recently appeared on television. McGuire stated that had he been drafted into the army, he would have fled to Canada. Hunter, who had served in Vietnam, questioned McGuire's patriotism and stated that he would serve again if called. McGuire responded that Hunter's mother had raised a fool.
 
 
 4
 At the mention of his mother, Hunter became enraged. He admittedly shoved McGuire. The commotion drew several other employees to the scene. Although it is undisputed that Hunter had the pocket knife on his person during the fight, the district court did not decide whether he pulled the knife on McGuire. The court held that since Lantech's rule against fighting justified the termination, 'whether or not the plaintiff had a knife in his hand is not dispositive of the ultimate question, that is, whether plaintiff's discharge was racially motivated.'
 
 
 5
 Vice-president Ronald Ball of Lantech investigated the matter and suspended both Hunter and McGuire. He recommended to the Plant Management Organization (PMO) that Hunter be discharged. The PMO consisted of all employees choosing to participate. It had jurisdiction only over participating employees and voted on the penalty an employee would receive for violating company rules. The PMO voted twenty-one to twenty to discharge Hunter.
 
 
 6
 Under Lantech's disciplinary system, either the employee or management could appeal a PMO vote to the Board of Directors, which had final decision-making authority. Hunter appealed and requested leniency. The Board voted to uphold the discharge.
 
 
 7
 The plaintiff filed suit in October 1981. The district court held that Hunter had not established a prima facie case because the Board of Directors, which had final authority, had not been shown to be racially motivated. The court further held that assuming the plaintiff had established a prima facie case, Lantech had articulated a legitimate, non-discriminatory reason for the discharge (i.e., its no-fighting policy) that had not been shown to be pretextual.
 
 
 8
 Although the district court held that Hunter failed to establish a prima facie case, Lantech did not obtain a directed verdict and the case was fully tried. Where a title VII case has been fully tried after a defendant has failed to obtain a directed verdict on the ground that the plaintiff did not establish a prima facie case, the Supreme Court has directed that a court of appeals should focus not upon the prima facie case issue but instead upon the defendant's asserted explanation. United States Postal Service Board of Governors v. Aikens, 103 S. Ct. 1478, 1481-82 (1983). Consequently, assuming as we must that Hunter established a prima facie case, we consider the issues of whether Lantech adequately articulated, through admissible evidence, a clear, specific and non-discriminatory reason for the discharge and whether any such asserted reason has been shown to be pretextual. See generally Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); Brooks v. Ashtabula County Welfare Department, 717 F.2d 263 (6th Cir. 1983), cert. denied, 104 S. Ct. 1687 (1984). Although the issue of whether Lantech adequately articulated a non-discriminatory reason for the discharge is a question of law, the ultimate issue of whether any adequately articulated reason has been shown to be a pretext for racial discrimination is a question of fact reviewable only under the clearly erroneous standard. Pullman-Standard v. Swint, 456 U.S. 273 (1982).
 
 
 9
 We begin, then, with an analysis of whether Lantech adequately articulated a clear, specific and non-discriminatory reason for the discharge. At trial, Hunter contended that some of the PMO members were racially motivated. For instance, employee Bell stated shortly after the vote, 'well, we got another one out on welfare.' Moreover, Hunter asserted that employee Taylor was racially biased because Taylor had warned him after he had successfully appealed a prior PMO vote, 'well you made it this time, but we'll get you.'
 
 
 10
 In response to these allegations of racial bias, Lantech introduced evidence that Vice-president Ball, who encouraged the PMO to discharge Hunter, was motivated by a desire to enforce Lantech's policy against fighting. Two members of the Board of Directors testified that they were similarly motivated. Furthermore, Lantech produced a copy of the employee handbook in which the policy against fighting was published.
 
 
 11
 For two reasons, Hunter argues that Lantech inadequately articulated a non-discriminatory reason for the discharge. First, he contends that the motive of the Board of Directors could be articulated only by introducing minutes of the Board of Directors meeting at which the decision to discharge him was made or through the testimony of a quorum of the Board members (i.e., three members rather than just two). We disagree. The only burden on Lantech was to articulate a non-discriminatory reason for the discharge. This Lantech did through the testimony of Ball and two members of the Board of Directors. Hunter's argument is that the other three Board members may have been racially motivated. That assertion is relevant, however, to the issue of whether Lantech's articulated reason was pretextual rather than to the question of whether Lantech articulated a non-discriminatory reason at all.
 
 
 12
 Hunter's second argument is that Lantech failed to articulate a non-discriminatory reason for the discharge because it never produced a legitimate reason which allegedly motivated the PMO to vote for his termination. Hunter contends that Lantech only produced evidence of why Vice-president Ball and the Board of Directors acted. Underlying Hunter's position is the assumption that even if a final decision-maker (i.e., the Board of Directors) is not racially motivated, a title VII violation nevertheless occurs if any management actor/group in the disciplinary process is racially motivated. If Hunter is correct, then an employer must articulate a non-discriminatory reason underlying each actor's, or group's, decision.
 
 
 13
 The plaintiff argues that this result is mandated by three cases: Connecticut v. Teal, 457 U.S. 440 (1982); Anderson v. Methodist Evangelical Hospital, Inc., 464 F.2d 723 (6th Cir. 1972); Miller v. Bank of America, 600 F.2d 211 (9th Cir. 1979). We disagree. Teal was a disparate impact case in which the Supreme Court held that an employer may not attempt to justify discrimination against an individual by claiming that its workforce on the whole is racially balanced. The Court held that title VII protects minority individuals and not just groups. In the present case, Lantech is not claiming that although it discriminated against Hunter, its workforce is racially balanced. Rather, Lantech contends that because the body with final decision-making authority (the Board of Directors) was not racially motivated, Hunter received non-discriminatory treatment as an individual. Indeed, the Supreme Court stated in Teal that a non-discriminatory 'bottom line' is relevant in an individual disparate treatment case. 457 U.S. at 454. If the employer has reached a non-discriminatory final result in an individual employee's case, then the employee's title VII rights have been respected.
 
 
 14
 This court's decision in Anderson is distinguishable from the present case. In Anderson, the final decision-maker was an unlawfully motivated supervisor rather than an upper management person or group that was not racially motivated. Since the supervisor's decision was not reviewed by upper management in Anderson, the employer could not claim, as Lantech does here, that a non-discriminatory final result was achieved.
 
 
 15
 The Miller case is similar to Anderson. The plaintiff in that case also was discharged by an unlawfully motivated supervisor and the decision was not reviewed at higher levels of management. Thus, Miller is factually distinguishable.* Moreover, the legal analysis in Miller, if it supports anyone, favors Lantech rather than Hunter. In discussing what an employer can do to remedy the discriminatory conduct of a lower management official once a complaint has been filed with the EEOC, the court stated:
 
 
 16
 An employer whose internal procedures would have redressed the alleged discrimination can avoid litigation by employing those procedures to remedy the discrimination upon receiving notice of the complaint or during the conciliation period.
 
 
 17
 Id. at 214. By analogy, Lantech could rectify any racial animus exhibited by PMO members by providing for independent review of the PMO vote by a Board of Directors that was not racially motivated. Since Lantech produced admissible evidence that the Board was motivated solely by a desire to enforce the company's policy against fighting rather than by racial animus, we hold that Lantech adequately articulated a clear, specific and non-discriminatory reason for the discharge.
 
 
 18
 The final issue to be addressed is whether the district court clearly erred in finding that Lantech's asserted reason for the discharge had not been shown to be pretextual. As has been indicated, Lantech's articulated justification was that it merely was enforcing its policy against fighting. On the pretext issue, Hunter argued, in addition to the racial animus purportedly exhibited by PMO members, that there was a general atmosphere of anti-minority animus at Lantech's facility, that the plant owners had told the PMO members that they had to decide whether Hunter and McGuire would retain their jobs and that a white employee had not been discharged after cutting another employee's shirt with a knife. In response, Lantech pointed out that the company had a long-standing policy under which fighting could result in immediate discharge, that the shirt-cutting incident had been a prank rather than a fight, that after the only other fight in plant history the company had given a white employee the option of resigning or being discharged, that no general atmosphere of anti-minority animus had been brought to management's attention and that a white supervisor had been discharged for making racially derogatory remarks to a black worker.
 
 
 19
 We hold that the district court's decision that Lantech discharged Hunter for reasons other than race is not clearly erroneous. First, the company had a long-standing rule against fighting; the only other employee to violate the rule, a white male, had also been terminated. Hunter never showed that the shirt-cutting incident involved a fighting situation. Second, although employer tolerance of pervasive use of racial slurs in the workplace can constitute a title VII violation, the presence of isolated, sporadic or casual racial insults cannot. See Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir. 1977). While Hunter asserts that Lantech's facility has a racially charged atmosphere, his allegations actually fall into the isolated or sporadic category. Moreover, Hunter does not explain how the alleged atmosphere of racial animus at the plant could have affected the Board of Director's decision. Furthermore, in one specific instance where a supervisor subjected a black worker to racial epithets, the supervisor was discharged.
 
 
 20
 Finally, we note that the Board of Directors treated the plaintiff fairly in the past. Faced with a PMO vote to discharge Hunter because of excessive tardiness, the Board overruled the PMO. The Board's prior willingness to overturn an adverse PMO decision involving Hunter is evidence that the Board was not biased against him because of his race in this case.
 
 
 21
 On this record, we cannot find that the district court's ultimate conclusion of no racial discrimination is clearly erroneous. The judgment of the district court is AFFIRMED.
 
 
 
 *
 We do not address the issue of whether the discharge of Hunter would have been illegal had the PMO been the final decision-maker