Kenneth **HAROLDSEN**, Appellant,

v.

**OMNI ENTERPRISES, INC.**, d/b/a Swanson's, Appellee.

No. S–6454.

Supreme Court of Alaska.

Sept. 1, 1995.

---

James J. Davis, Jr. and Deborah Reichard, Alaska Legal Services Corporation, Bethel, Carol H. Daniel and Joseph D. Johnson, Alaska Legal Services Corporation, Anchorage, for appellant.

Scott Jay Sidell, Law Office of Chris Provost, Bethel, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

This case requires us to determine whether the superior court properly granted summary judgment against Kenneth Haroldsen in his wrongful termination action against his former employer, Swanson's.[1]

## I. FACTS & PROCEEDINGS

Haroldsen is a Yup'ik man, who, until he was fired, was an employee in the maintenance department of Swanson's in Bethel. He was initially hired by Swanson's in 1991 to work in the furniture department, and was later promoted to manager of that department. In December 1992, Haroldsen was transferred to the maintenance department for which he received a pay raise from $11.00 to $12.50 per hour.[2]

When Haroldsen took this position there was only one other employee in the maintenance department, the department's manager, Jim Panko. Sometime later, Chris Taveres was rehired by the department. Taveres had worked on and off for Swanson's, and particularly for the maintenance department, for many years. Both Taveres and Panko are Caucasian.

---

1. Swanson's is owned and operated by defendant OMNI Enterprises, Inc.

2. The circumstances surrounding his transfer are in dispute. Swanson's contends that Haroldsen was transferred by his father-in-law, Don Tubbs, who at the time was co-manager of the store. Haroldsen contends that Jim Panko, head of the maintenance department, requested that Haroldsen be transferred, and that he was then offered the job.

In February 1993, George Myran took over as Swanson's sole general manager. He had previously been co-general manager with Don Tubbs, Haroldsen's father-in-law. Several weeks later, Myran terminated Haroldsen's employment. In an affidavit, Myran described his reasons for doing so:

> [W]hen I took over responsibility for the maintenance department, there were three people in the department.... It was immediately obvious to me that there was no need for three maintenance workers. I made the decision to execute a reduction in work force by layoff. It made no difference to me what race the individual was; there were labor dollars being spent that did not need to be spent. Ken Haroldsen was by far the least skilled and experienced of the three and had the least time in the department. The maintenance supervisor, Jim Panko, was very skilled and experienced. His assistant Chris Taveres, though not always reliable, was the most skilled and experienced of the three. Mr. Taveres had been with Swanson's for many years and knew the physical plant as well as anyone, including his supervisor, Jim Panko. In contrast, Mr. Haroldsen had to my knowledge no previous experience as a maintenance worker and had done little in the position since his transfer. Jim Panko had mentioned to me on more than one occasion that Mr. Haroldsen was "useless" to him.

Myran attributed Haroldsen's advance in the company and certain privileges he had previously received as a worker to the "blatant nepotism exhibited by Don Tubbs." Myran affied that the special privileges which Haroldsen had received were resented by the other employees and created a morale problem.

Swanson's did not rely solely on the reduction in force to justify its decision to terminate Haroldsen. To this effect, Myran further stated in his affidavit as follows:

> I would have laid off anyone in the job with as little experience as Mr. Haroldsen. I must admit, however, that I did not think that Swanson's was losing a valuable worker when Mr. Haroldsen was discharged. To the contrary, there were at least three other reasons why, in my opinion, Mr. Haroldsen could and should have been fired for cause long before....

He then detailed these reasons including a history of absenteeism and tardiness, Haroldsen's poor work performance, and alleged thefts from the store. However, Swanson's presented no evidence that Haroldsen had ever been previously reprimanded for his actions, nor had any prior notice been given that he would be terminated unless his performance improved. Finally, Haroldsen was never denied a raise which he requested.

Haroldsen attributes the firing decision to Myran's racial animus and argues that Swanson's stated reasons were pretextual. He provided the superior court with affidavits of several former employees of Swanson's who claim to have heard Myran make racially derogatory remarks about other Native employees. He also provided affidavits, primarily by himself and his father-in-law, Tubbs, in an effort to rebut the other justifications Myran gave for firing him.

Shortly after Haroldsen was fired both Panko and Taveres quit. Swanson's did not extend an offer to Haroldsen to return.[3] Two Caucasians were hired to fill the vacant positions.

In July 1993, Haroldsen filed suit in the superior court in Bethel alleging that he had been wrongfully terminated. Specifically, he alleged that Swanson's had violated Alaska's Civil Rights Statute by engaging in racial discrimination. AS 18.80.220. He also claimed that Swanson's had violated the implied covenant of good faith and fair dealing which is a part of every employment contract in Alaska.

Before trial, Swanson's moved for, and the superior court granted, summary judgment on both of Haroldsen's claims. In its written decision, the court concluded that Haroldsen had raised genuine issues of material fact with respect to the work performance, tardi-

---

**3.** Myran states that Swanson's did not rehire Haroldsen because of the other problems which it alleged justified its firing of Haroldsen.

ness and absenteeism, and theft justifications offered by Swanson's. Additionally, it concluded that with respect to employee morale, Swanson's had failed to provide evidence of any formal company policy which was violated, and further that morale could have been improved by other less drastic measures such as removing the privileges. However, the court held that Swanson's had demonstrated that it had reduced the number of employees in its maintenance department from three to two. Because Haroldsen failed to show that he was more experienced and skilled than either of the retained employees, he did not demonstrate that this reason was pretextual.[4] Finally, the superior court held that the factual basis for Haroldsen's claim regarding the implied covenant of good faith was the racial discrimination which he had alleged violated Alaska's Civil Rights Statute. Thus, his failure to raise a genuine issue of material fact on his statutory claim meant that summary judgment was granted on the contract claim as well. Haroldsen now appeals.

## II. *DISCUSSION*[5]

### A. *The Statute and Analytic Framework*

Alaska Statute 18.80.220(a)(1) states, "It is unlawful for an employer to refuse employment to a person, or to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's race, religion, color, or national origin...." In applying AS 18.80.220(a)(1), this court has expressly adopted the three-part analytic framework used by federal courts in Title VII cases. *Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 488 n. 1, 490

(Alaska 1980). First, the employee "carr[ies] the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" why the employee was discharged. *Id.* Finally, the burden shifts back to the employee "to show that [the employer's] stated reason for [discharging the employee] was in fact pretext." *Id.* at 804, 93 S.Ct. at 1825.

### B. *The Prima Facie Case*

The superior court stated that in a workforce reduction situation, a prima facie case is established when the employee produces evidence to show "(1) that he is within the protected class, (2) that he was qualified for the job and performing according to the legitimate expectations of the employer, (3) that he was adversely affected by an employment decision, (4) and that others, who are not within the protected class, were treated more favorably."[6] The superior court concluded that Haroldsen had met this burden.

Swanson's argues that this formulation of the prima facie case is incorrect. Relying on *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990), Swanson's contends that an inference of discrimination is raised only where the discharged employee demonstrates that he is *more* qualified than a retained employee who is not within the protected class. Because Haroldsen's evidence at best showed "[Taveres] was more skilled in certain areas and [Haroldsen] was more skilled than [Taveres] in other areas," he failed to demonstrate a prima facie case.[7]

---

4. The superior court also dismissed Haroldsen's evidence regarding racial remarks which Myran allegedly made because Haroldsen had failed to link these comments to the disputed personnel decision.

5. This court reviews a grant of summary judgment using its independent judgment. The "court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party and in

favor of the non-moving party." *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992) (citation omitted).

6. The superior court cited *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922–23 (7th Cir. 1988), and *Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 641–45 (5th Cir.1985).

7. We note that Swanson's unnecessarily limits the concept of "qualification" to job skill. The trial court may consider any factor an employer would consider in evaluating the job perfor-

■ We reject the *Barnes* formulation because it misconstrues the purpose of the prima facie case. The U.S. Supreme Court has stated in the context of a hiring discrimination case that the prima facie case is meant to require

> the alleged discriminatee [to] demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977). In *Barnes,* the court reasoned that this rationale is inapplicable in work force reduction cases because the employer had a legitimate reason: the elimination of excess employees which necessarily reduces costs. 896 F.2d at 1464–65. However, this still leaves unexplained why the employer chose one employee rather than another, and it is here that the potential discrimination lies.[8] The employer is required at the second step of the analysis to rebut the presumption by stating the permissible, objective criteria which led to the decision to terminate the plaintiff rather than another employee. By cutting the analysis off before such an inquiry, the court never gets to determine whether such criteria exist.

Additionally, although the U.S. Supreme Court recognized in *McDonnell Douglas Corp.* that the prima facie case will vary with the factual circumstances of the particular case, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, the formulation used by the superior court is closer to the test adopted by this court in other cases under Alaska's Civil Rights Statute. For example, in *Yellow Cab,* a case involving hiring discrimination, this court held that a prima facie case was demonstrated if after the plaintiff's rejection "the position remained open and the employer continued to seek applications *from persons of complainant's qualifications.*" 611 P.2d at 490 (quoting *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824) (emphasis added).

### C. *Swanson's Stated Rationale*

Swanson's gave five business justifications for terminating Haroldsen rather than Taveres: (1) poor work performance; (2) damage to employee morale resulting from Tubbs' favoritism; (3) a reduction in force (RIF); (4) absenteeism and tardiness; and (5) theft. These reasons were all amply supported by affidavits provided by Swanson's.

### D. *Pretext*

■ The U.S. Supreme Court adopted the three-part analysis for Title VII cases because it is usually impossible for an employee to directly prove that the employer acted with a discriminatory intent.[9] Instead, the employee is allowed to prove such animus inferentially by challenging the employer's stated justifications for taking the adverse action. Thus, once the employee has established a prima facie case, the proper inquiry for the trial court at summary judgment is *not* "Has the employer stated a justifiable reason for terminating the employee?" Rather, it is "Has the employee raised sufficient doubts regarding the employer's stated

mance of its employees. Thus, where, as here, there are serious questions regarding the reliability of the retained employee, and the same concerns do not exist with regard to the terminated employee, the question is raised: "Why did the employer choose to retain this employee rather than the employee in the protected class?" This is precisely the question which the prima facie case is meant to raise.

8. *See, e.g., Thornbrough,* 760 F.2d at 644 ("If we focus not on why employees, in general, were discharged, ... but instead on why the plaintiff rather than another employee was discharged, the discharge of an older employee rather than a younger one is initially unexplained. Under these circumstances, requiring the employer to articulate reasons for his decision to fire the plaintiff is appropriate. It serves the primary function of the prima facie case doctrine: 'to sharpen the inquiry into the elusive factual question of intentional discrimination.' ").

9. *See United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes.").

justifications to permit a reasonable jury to infer that the reasons given are pretextual?"[10]

### 1. *Reduction in Force*

 The superior court determined that Haroldsen failed to provide sufficient evidence to create a genuine issue of material fact that Swanson's alleged RIF was a pretext for unlawful discrimination. Thus, even though he had provided affidavits to raise a genuine issue of material fact with respect to the other reasons, Haroldsen had failed to meet his burden to avoid summary judgment.[11]

The problem with the superior court's reasoning is that the decision of who to terminate, Haroldsen or Taveres, was inextricably bound to the other justifications for which the superior court found that Haroldsen had demonstrated there was a material factual dispute. In his affidavit, Myran justified the decision to terminate Haroldsen rather than Taveres not only by making factual allegations distinguishing between their relative abilities, but also by discussing Haroldsen's alleged tardiness, poor work performance, and thievery. If, as the superior court held, a jury could find that these reasons were pretextual, then even if Taveres was more qualified, the jury would be free to conclude that Myran was motivated by racial animus in making the decision to terminate him rather than Taveres.[12]

The other evidence before the court also supports this conclusion. Haroldsen submitted affidavits from two other ex-employees of Swanson's regarding alleged racist remarks made by Myran.[13] Swanson's failed to provide any evidence that Haroldsen was at any time warned or reprimanded prior to his firing, even after Myran took over as sole general manager. The fact that Tavares was rehired shortly before Haroldsen was laid off and that both Tavares and Panko left Swanson's shortly thereafter raises a question as to whether a reduction in force even occurred. Finally, Haroldsen provided evidence that his performance was satisfacto-

---

10. *See Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993) ("plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext").

11. Haroldsen argues first that as a general rule, summary judgment is an inappropriate means to resolve issues of intent. Because racial discrimination cases go directly to the question of intent, summary judgment should not have been granted in the present case.

We have previously stated that even where intent is an issue summary judgment may be proper in certain cases. *See Turnbull v. LaRose,* 702 P.2d 1331, 1335 (Alaska 1985). Therefore, we choose not to adopt a *per se* rule barring summary judgment in all employment discrimination cases. However, we have also noted that summary judgment should only be granted in clear cases because, generally, "the fact finder should be given the opportunity to observe the demeanor of the witnesses whose states of mind are at issue." *Id.; see also Jones v. Central Peninsula Gen. Hosp.,* 779 P.2d 783, 789 (Alaska 1989). Other courts addressing this issue in the context of employment discrimination have also noted that summary judgment is often inappropriate to resolve issues of the existence of discriminatory intent. *See, e.g., Yartzoff v. Thomas,*

809 F.2d 1371, 1377 (9th Cir.1987) ("a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the 'elusive factual question' of intentional discrimination"); *E.E.O.C. v. Southwest Texas Methodist Hosp.,* 606 F.2d 63, 65 (5th Cir.1979).

12. Our statute bars employment decisions based on both racial animus and other legitimate considerations. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 241, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989) ("Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations.").

13. Swanson's argues that these statements are not sufficient evidence on their own to survive summary judgment because they are not directly related to the employment decision at issue. *See Cariddi v. Kansas City Chiefs Football Club, Inc.,* 568 F.2d 87, 88 (8th Cir.1977); *Crader v. Concordia College,* 724 F.Supp. 558, 564 (N.D.Ill.1989). However, precedent on this issue is mixed and we need not resolve this issue. At the very least, this was competent and relevant evidence which a jury would be entitled to evaluate in determining the likelihood that the reasons given by Swanson's were pretextual. *See E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1071 n. 9 (11th Cir.1990).

ry.[14] Viewing this evidence in the light most favorable to Haroldsen, a reasonable jury could conclude that Swanson's stated reasons were pretextual. We therefore conclude that summary judgment on this issue was improper.

### 2. *The Other Reasons Alleged by Swanson's*

Finally, we briefly address Swanson's arguments that summary judgment should be upheld because the trial court erred in finding Haroldsen had raised a material issue of fact with respect to its other justifications for firing him. This discussion will also serve to clarify the parties' respective burdens of proof at trial.

First, with respect to Haroldsen's work performance, Swanson's argues that the relevant issue is not the actual quality of the employee's performance, but rather whether the employer is sincere in stating that performance is the reason for the termination.[15] Thus, because the only evidence Haroldsen provided was his personal opinion of his own performance, he failed to demonstrate that Swanson's reason was pretextual.

 This argument is in part correct. The ultimate issue in any employment discrimination case is whether racial animus motivated the employer in making its employment decision. Thus, if an employer can show that it subjectively believed it had a legal justification, and that it was acting solely on this belief, an employee's racial discrim-

ination claim must fail. However, this does not mean that objective evidence regarding the justification is irrelevant, or even secondary. An individual's testimony regarding their intent or motivation is not always reliable, especially where the individual is a party to the litigation. One of the primary means for the fact-finder to verify a party's testimony regarding their intent is to examine the objective evidence that supports that party's conclusion. This is especially true on summary judgment where there is no opportunity to observe the witness testifying. If the objective evidence is such that it does not support the stated justification, a reasonable jury could conclude that the party's intent was other than they have testified, and summary judgment would therefore be improper.

 Swanson's also argues that Haroldsen's self-interested assessment of his own qualifications is irrelevant. It is true that an employee should not be permitted to create their own job description in such a manner as to show they are qualified. However, where as here, there is no pre-existing job description against which to objectively measure an employee's qualifications, the scope of relevant evidence must necessarily be broader.[16] Thus, we conclude that in such a case an employee can avoid summary judgment with his own affidavit if he avers specific facts which would tend to show that he was qualified to do the work which he was assigned to do.[17]

---

**14.** Swanson's admitted in its answer to Haroldsen's complaint that he had never been denied a raise which he had requested. Additionally, Don Tubbs, the former general manager, affied that while Haroldsen managed the furniture department, gross profits increased and that the operations manager of Swanson's parent company had told him that he was impressed with Haroldsen's job performance. Finally, with respect to his work in the maintenance department, Tubbs affied that Haroldsen successfully fixed a heating system which Panko had been unable to fix, and that Haroldsen was often left alone in the department when Panko's job forced him to travel to other stores. While Tubbs' relationship with Haroldsen suggests that he might have a motive to lie or to exaggerate, such credibility determinations are for the trier of fact.

**15.** *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

**16.** Otherwise, Swanson's own arguments with regard to Haroldsen would apply equally to them. That is, Swanson's would be free to make up a job description which Haroldsen did not meet, and then on summary judgment simply state he was not qualified.

**17.** For example, with respect to work performance, Haroldsen provided the following evidence: (1) that he was often called upon to work alone in the department for long periods; (2) that an OMNI executive had complimented his work as furniture department manager; (3) that he was able to repair the heating system at one of Swanson's other properties; and (4) that Tubbs stated that all of the jobs which he saw Haroldsen do were done well.

After reviewing the evidence, we conclude that the superior court properly found that Haroldsen had raised genuine issues of material fact with respect to the other justifications.[18]

## III. CONCLUSION

We conclude that summary judgment was improper because Kenneth Haroldsen raised an issue of material fact as to whether Swanson's stated reasons for terminating his employment were pretextual. We therefore REVERSE the superior court's entry of summary judgment in favor of Swanson's and REMAND for further proceedings.[19] Because Swanson's is no longer the prevailing party, the award of attorney's fees is VACATED.

---

**18.** Based on his complaint, Haroldsen's claim with respect to the implied covenant of good faith and fair dealing is premised on the same basic factual allegations as his racial discrimination claim. Because we reverse summary judgment on the statutory claim, we also conclude that reversal is appropriate on the contract claim to allow Haroldsen to more clearly articulate the contours of his breach of contract claim.

**19.** Our disposition of the summary judgment issue in favor of Haroldsen makes it unnecessary for us to consider the other issues he raises on appeal. The question of whether the superior court improperly struck the additional evidence offered with Haroldsen's motion for rehearing is moot.