RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KARYN RISCH,

        *Plaintiff-Appellant,*

    *v.*

ROYAL OAK POLICE DEPARTMENT,

        *Defendant-Appellee.*

No. 08-1883

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 06-12521—John Corbett O'Meara, District Judge.

Argued: August 4, 2009

Decided and Filed: September 23, 2009

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Richard I. Lippitt, LAW OFFICE OF RICHARD I. LIPPITT, P.C., Milford, Michigan, for Appellant. Karen M. Daley, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee. **ON BRIEF:** Richard I. Lippitt, LAW OFFICE OF RICHARD I. LIPPITT, P.C., Milford, Michigan, for Appellant. Karen M. Daley, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, for Appellee.

    MOORE, J., delivered the opinion of the court, in which SILER, J., joined. GRIFFIN, J. (pp. 16-23), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Karyn Risch ("Risch") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Royal Oak Police Department ("the Department"), on Risch's gender-discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000e *et seq.* In 2005, Risch, a uniformed patrol officer and seventeen-year veteran of the Department, was passed over for a promotion to the position of detective in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department. The district court found that Risch had failed to raise a genuine issue of fact concerning whether the Department's proffered reason for not promoting Risch was a pretext for gender discrimination. Because Risch had arguably superior qualifications than the two successful applicants and has produced other probative evidence of gender discrimination, we **REVERSE** the district court's grant of summary judgment to the Department on Risch's gender-discrimination claim and **REMAND** for further proceedings.

## I. BACKGROUND

Risch is a uniformed patrol officer who has been employed by the Department for seventeen years. On several occasions between 2001 and 2005, Risch applied for a promotion within the Department and was passed over by Police Chief Theodore Quisenberry ("Quisenberry") in favor of male candidates who had received lower scores under the civil-service-promotion system used by the Department.[1] Under that system, a candidate for promotion in the Department must first score 70% or higher on a written examination. Candidates who meet that minimum requirement are then given an overall numerical score based upon a weighted scale: 70% for written examinations, 20% for performance reviews conducted by the Department, and 10% for seniority. Once each candidate is given a numerical score, the City of Royal Oaks Civil Service Board creates a ranked list of candidates that is presented to the Police Chief. Pursuant to the city's civil-service ordinance, the Police Chief must fill each vacancy by choosing one of the top three scorers on the promotion list. When there is more than one vacancy, the number of eligible candidates who may be chosen by the Police Chief increases by one for each additional vacancy. Thus, when there are two vacancies, the Police Chief may choose from among the top four scorers on the promotion list to fill those vacancies. Promotion lists generally remain valid for one year but may be extended for an additional six months upon a request by the Police Chief.

---

[1] Quisenberry began his tenure as Police Chief on January 3, 2001, having previously served as Deputy Chief of the Southfield Police Department in Southfield, Michigan.

In June 2002, Risch was ranked second on a promotion list for detective, but Quisenberry chose a male candidate who was ranked third, Donald Swiatkowski. In January 2003, Risch was again ranked second on a promotion list—this time for the position of sergeant. This list was effective from January 30, 2003, through January 30, 2004, and included four other candidates, all of whom were male. Quisenberry filled three vacancies during this period, again passing over Risch in favor of male candidates. In August 2003, Quisenberry promoted Gordon Young, the first-ranked candidate, and in January 2004, Quisenberry promoted Thomas Goad and David Clemens, the third- and fourth-ranked candidates respectively, whose lower test scores and fewer years of service resulted in lower total scores than Risch.

Finally, Risch was ranked third on a promotion list for the position of detective that was effective from March 4, 2004, through September 4, 2005.[2] Quisenberry filled three vacancies during this period, but once again passed over Risch in favor of male candidates. In June 2005, Quisenberry promoted Perry Edgell and Michael Moore ("Moore"), the second- and fourth-ranked candidates respectively, and in August 2005 Quisenberry promoted Keith Spencer ("Spencer"), the fifth-ranked candidate. Although Risch's exam and performance-evaluation scores were slightly lower than those of Moore and Spencer, Risch's significantly greater seniority gave her a total score of 81.72, putting her ahead of both Moore (81.47) and Spencer (81.24). Quisenberry explained in an affidavit that he decided which candidates to promote to the position of detective in 2005 based upon "service and performance as demonstrated by their performance evaluations, test scores, initiative and leadership qualities." Record on Appeal ("ROA") at 133 (Quisenberry Aff. at 2). According to Quisenberry, "Risch was not selected for promotion because the other officers in the eligibility list had better test scores, better performance evaluations and demonstrated more initiative and leadership qualities." *Id.* Notably absent from the list of factors that Quisenberry says he

---

[2]As Risch concedes, she may recover only for the alleged discriminatory acts committed by the Department in 2005. The district court dismissed Risch's claims concerning acts that occurred in 2002, 2003, and 2004 because the applicable limitations provision of Title VII bars recovery for employment discrimination that occurred more than 300 days before Risch filed an EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1). Because Risch did not file an EEOC charge until October 20, 2005, she cannot recover for the alleged discriminatory acts in 2002, 2003, and 2004.

considered is seniority—the criterion that lifted the overall score of seventeen-year-veteran Risch over Moore and Spencer.

The 2004-2005 promotion list reflected that Risch had received slightly lower scores than Moore and Spencer in recent semi-annual performance evaluations. In her April 2003 review, for instance, Risch received a total performance rating of 79.5 and an unsatisfactory score for cooperation with associates. Risch's supervising officer commented that Risch was "not very motivated" and was "too vocal with her negative opinions of the department," but added that Risch "kn[ew] her job" and had "improved her report writing efforts." ROA at 66 (Risch Rating Form 4/24/03 at 1). Still, Risch's April 2003 performance rating of 79.5 was only slightly lower than Moore's April 2003 rating of 82.0, and Risch outscored Moore in several categories, including judgment, quality of work, and public contacts. Similarly, although Risch's April 2003 overall performance rating was somewhat lower than Spencer's April 2003 rating, Risch outperformed Spencer in quality of work, knowledge of work, and public contacts. Risch received similar ratings on subsequent performance reviews in October 2003[3] (total rating 80.7) and October 2004[4] (76.9) and received only one unsatisfactory score in each of these reviews.

Risch received significantly higher performance ratings between 1996 and 2000 than she did between 2001 and 2005 when she was attempting to gain a promotion. Between 1996 and 2000, Risch consistently scored in the high 80s and low 90s, with a

---

[3]Risch's October 2003 rating form included the following comments from the supervising officer: (+) Has improved on negative attitude from prior ratings period. Arrest numbers are good. Traffic totals are average, which is improved from below average. Accepted directed patrol details without complaint. Still needs reminders to maintain acceptable levels of performance.
ROA at 63 (Risch Rating Form 10/9/03 at 1).

[4]Risch's October 2004 rating form included the following comments from the supervising officer: (+) Good arrest numbers this ratings period. (-) Counseled for zero traffic enforcement 4/04. Counseled about padding her logs, low productivity, malingering about the station, over use o[f] siren at vehicle check. Unfortunate continued documented history of sub-par performance and articulation of unhappiness with ROPD. Over average sick time use this period.
ROA at 69 (Risch Rating Form 10/21/04 at 1).

low of 86.6 and a high of 91.9.  By contrast, between 2001 and 2005, Risch generally scored in the low 80s, with a low of 76.9 and a high of 85.2.

The Department consists of a rank-and-file staff of around sixty officers, around thirteen or fourteen of whom are female, and a command staff of around fifteen or sixteen individuals with managerial roles, including the Police Chief, the Deputy Chief, and several lieutenants, sergeants, and detectives.  Between 2001 and 2005, only one female officer, Lynn Barron ("Barron"), served on the command staff.  Barron was promoted to the command staff position of sergeant in 2002, but for reasons that are unclear in the record took early retirement and left the Department by 2005.  Apart from Barron, Risch was evidently the only female officer who appeared on promotion lists during the first five years of Quisenberry's tenure.

Risch testified in her deposition that under Quisenberry's tenure the Department was permeated by an atmosphere of hostility toward female officers and that female officers seeking promotions were held to a higher standard than male officers.  Risch recalled hearing numerous comments such as "the chief [will] never have a female in the command staff," and "[n]one of you [female officers] will ever go anywhere."  ROA at 96 (Risch Dep. Tr. at 75).  Risch also testified that she had heard a "majority" of male officers say that women do not belong in the police force.  *Id.*  Risch observed that negative comments about female officers were so common in the Department that "you just . . . get used to it . . . you don't think about jotting them down, it's just something that happens all the time."  *Id.*  According to Risch, the Department was permeated by "an overall little boys club" in which female officers were "held higher to a different standard than . . . male[s]."  ROA at 99 (Risch Dep. Tr. at 175).

Risch also identified particular incidents in which command officers made degrading comments about women and gave preference to male officers when assigning work.  Risch testified that a male sergeant named Clemens, who was later promoted to lieutenant, called it "bitching" when Risch raised a concern about "neatness and how things were filed" and suggested a possible improvement.  ROA at 96 (Risch Dep. Tr. at 73-74).  Risch also testified that Lieutenant Donald Foster ("Foster") discriminated

against female officers when he assigned work. According to Risch, when assigning extra duties, Foster "gave all the plum assignments to the males," offering "males . . . the opportunity to decide what kind of work they wanted to do that day" but denying that choice to female officers. ROA at 96 (Risch Dep. Tr. at 76). Risch further testified that Foster gave male officers preference over female officers in distributing shift assignments, giving males "any kind of detail that they wanted to do, and if the males didn't want to do it the females would get stuck doing it." ROA at 97 (Risch Dep. Tr. at 157). According to Risch, whenever Foster dealt with female officers "he was very condescending towards them and treated them like they were ignorant." ROA at 97 (Risch Dep. Tr. at 160).

Another female officer, nineteen-year-veteran Renee Levasseur ("Levasseur"), testified that she had been dissuaded from seeking a promotion by the experiences of Risch and Lynn Barron. Levasseur stated that she came to believe that Quisenberry would not have women in the command staff after seeing Barron, without explanation, retire early after just a short tenure as a lieutenant. Levasseur testified that she found it inexplicable "[w]hy somebody that was a great police officer and great investigator, a good supervisor[,] would want to leave." ROA at 349 (Levasseur Dep. Tr. at 19). Levasseur testified that, "because of the way Lynn Barron left under those circumstances, and the way that Risch has been passed over," she had been "dissuaded . . . from ever trying" for a promotion. ROA at 360 (Levasseur Dep. Tr. at 63). Levasseur further testified that she believed female officers, including herself, were treated less favorably than male officers in the performance reviews conducted by supervising officers. Finally, like Risch, Levasseur testified that she believed "some command officers . . . are part of [an] old boy's club." ROA at 363 (Levasseur Dep. Tr. at 73).

An eight-year-veteran patrol officer, Steven Teichow ("Teichow"), also testified that he had witnessed hostility toward the promotion of female officers among members of the command staff during Quisenberry's tenure. Teichow recalled attending a meeting to consider candidates for promotion to the position of Field Training Officer

("FTO"). Risch and another female officer, Kathy Szydlowski, were among the candidates for FTO positions. Although Teichow could not remember the exact words, he recalls that the sergeant in charge of the FTO program at the time, Sergeant Kowalski, made "a general statement . . . something to do with the women in the Department" that "was clearly negative." ROA at 383-84 (Teichow Dep. Tr. at 16-17). According to Teichow, there was "some friction" at the meeting because the FTOs at the meeting believed that Risch was qualified, but the command officers, who made the final decision, were "completely and totally against her being part of the program." ROA at 384 (Teichow Dep. Tr. at 19-20). Both Risch and Szydlowski were evidently passed over for promotion to FTO positions. Teichow testified that Joyce Eagling, a female FTO who attended the meeting, "near[ly] came unglued because she believed it was based on [Risch and Szydlowski] being women." ROA at 385 (Teichow Dep. Tr. at 22).

After being passed over for promotion to detective in June and August of 2005, Risch filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2005. The EEOC issued Risch a right-to-sue letter on February 15, 2006. Risch then filed the instant action against the Department in the United States District Court for the Eastern District of Michigan, asserting a claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* In particular, Risch alleged that the Department had discriminated against her by failing to promote her to a command position despite six promotional opportunities between 2002 and 2005. Risch's complaint also stated claims of religious discrimination and retaliation in violation of Title VII.

On October 9, 2006, the Department filed a motion to dismiss, arguing that (1) the Royal Oak Police Department was not a proper party because it lacked the capacity to be sued, (2) the district court lacked jurisdiction over Risch's religious-discrimination claim because it was not within the scope of her EEOC charge, and (3) Risch's allegations of gender discrimination in 2002, 2003, and 2004 were barred by Title VII's 300-day statute of limitations. On March 20, 2007, the district court granted in part and denied in part the Department's motion to dismiss. The district court

dismissed Risch's religious-discrimination claim and dismissed Risch's gender-discrimination claim as to acts occurring in 2002, 2003, and 2004. The district court also granted Risch leave to amend her complaint by substituting the City of Royal Oak for the Royal Oak Police Department.

On September 21, 2007, the Department filed a motion for summary judgment on all of Risch's remaining claims. Risch filed an opposition on December 21, 2007, and the Department followed with a reply on January 31, 2008. On June 9, 2008, the district court granted the Department's motion for summary judgment and dismissed the case. *See Risch v. Royal Oak Police Dep't*, No. 06-12521, 2008 WL 2357705 (E.D. Mich. June 9, 2008). The district court found that Risch had established a prima facie case of gender discrimination but concluded that Risch had failed to present evidence that the Department's proffered nondiscriminatory reason for not promoting her was pretextual.

Risch filed a timely notice of appeal. On appeal, Risch does not raise any arguments as to her retaliation claim and has therefore forfeited this issue on appeal. *See Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008) (holding that argument not raised in opening brief was forfeited on appeal), *cert. denied*, 129 S. Ct. 1647 (2009). Accordingly, Risch's appeal is limited to her gender-discrimination claim challenging the Department's failure to promote her to the position of detective in 2005.

## II. ANALYSIS

"We review a district court's grant of summary judgment de novo." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, we view all facts and any inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We have explained that:

> At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried forward this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2).

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009).

Risch alleges that the Department violated Title VII by failing to promote her on account of her gender. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Title VII claims are subject to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as subsequently modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). We have explained that "'[o]n a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)). Under this framework, "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination." *Id.* If the plaintiff does so, "[t]he defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action." *Id.* Finally, if the defendant succeeds in this task, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for

unlawful discrimination." *Id.* "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253) (alteration in original).

Here, the Department does not challenge the district court's ruling that Risch has established a prima facie case of gender discrimination. *See* Department Br. at 19-30 (failing to argue that Risch did not establish prima facie case and instead arguing that Risch cannot show pretext). Risch, in turn, concedes that the Department has articulated a facially legitimate, nondiscriminatory reason for failing to promote Risch—the Department asserts that it promoted better qualified applicants who outscored Risch on performance reviews and the examination. Thus, we turn to the question of whether Risch has presented evidence raising a genuine issue of material fact whether the Department's proffered explanation for not promoting her was merely pretextual. The Department argues—and the district court found—that Risch failed to present sufficient evidence of pretext to survive summary judgment.

We have explained that "[a] plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White*, 533 F.3d at 393. "However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)); *see also Burdine*, 450 U.S. at 259 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

Evidence that the plaintiff was more qualified than the successful applicant can in some circumstances be sufficient to raise a genuine issue of material fact that the

employer's proffered explanation is pretextual.  *See White*, 533 F.3d at 394; *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006), *cert. denied*, 550 U.S. 904 (2007); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) ("Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989) (observing that a plaintiff "might seek to demonstrate that [the employer's] claim to have promoted a better qualified applicant was pretextual by showing that she was in fact better qualified than the person chosen for the position"), *superseded by statute on other grounds as stated in CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1956-57 (2008). We have explained that "[w]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender*, 455 F.3d at 626.  When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."  *Id.* at 626-27; *see also Jenkins v. Nashville Pub. Radio*, 106 F. App'x 991, 995 (6th Cir. 2004) (unpublished) (reversing summary judgment in favor of employer where employee offered evidence of superior qualifications and "some evidence of irregularities in the application and selection process, inconsistencies in the reasons given by [her employer] for not hiring her, and the lack of African-American women in supervisory positions at [her employer]").

The record in this case demonstrates that Risch had arguably superior qualifications for the position of detective than two of the male candidates promoted to that position in 2005—Moore and Spencer.  Although Risch's exam and performance-review scores were slightly lower than those of Moore and Spencer, Risch's total composite score of 81.72—based 70% on the exam, 20% on performance scores, and 10% on experience—was higher than both Moore's (81.47) and Spencer's (81.24). Moreover, although Risch's overall performance scores were slightly lower than those of Moore and Spencer, Risch outscored the two male candidates in several performance categories.  In the April 2003 reviews, Risch outperformed Moore in judgment, quality of work, and public contacts, and she outperformed Spencer in quality of work,

knowledge of work, and public contacts.  Furthermore, it is undisputed that Risch had far greater experience in the Department than the two male officers, resulting in a significantly higher experience score (97.03) than Moore (73.70) or Spencer (73.47).  Taking the facts in the light most favorable to Risch, as we must in evaluating a motion for summary judgment, it is clear that Risch was as qualified as or better qualified than either Moore or Spencer.

The record also contains other evidence probative of pretext.  The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women. Among the remarks alleged to have been made by male officers are the following:

> (1)  "[T]he chief [will] never have a female on the command staff." ROA at 96 (Risch Dep. Tr. at 75).
> (2)  "None of you [female officers] will ever go anywhere . . . ." *Id.*
> (3)  A "majority" of male officers told Risch that women do not belong in the police force. *Id.*
> (4)  Sergeant Clemens said that Risch was "bitching" when she raised a concern about "neatness and how things were filed" and suggested a possible improvement.  ROA at 96 (Risch Dep. Tr. at 73-74).
> (5)  During a meeting to consider promoting officers to the position of FTO attended by members of the command staff, Sergeant Kowalski made "a general statement . . . something to do with the women in the Department" that "was clearly negative."  ROA at 383-84 (Teichow Dep. Tr. at 16-17).  Risch and another female officer were denied promotions at that meeting.

We have held that discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356-57 (6th Cir. 1998).  We have explained the relevance of such discriminatory remarks as follows:

> Although discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable. Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the

> plaintiff.  While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Ercegovich*, 154 F.3d at 356 (internal quotation marks and citations omitted). Furthermore, "evidence of a . . . discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment."  *Id.* (internal quotation marks omitted).  In evaluating such statements, "courts must carefully evaluate factors affecting the statement's probative value, such as the declarant's position in the [employer's] hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext."  *Id.* at 357 (internal quotation marks and citation omitted).

The statements in this case evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers.  Two of the comments were made by sergeants who were members of the sixteen-person command staff, which serves as the managerial arm of the Department.  Discriminatory statements made by individuals occupying managerial positions can be particularly probative of a discriminatory workplace culture.  *See Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007); *Ercegovich*, 154 F.3d at 357. Moreover, Sergeant Kowalski's alleged discriminatory remark about female officers was made in the context of a meeting attended by at least one other member of the command staff in which two female officers were denied promotions.  Risch does not specify the officers who made the other discriminatory comments.  However, Risch's testimony indicates that comments such as women did not belong on the police force, and that Chief Quisenberry will "never have a female on the command staff," were commonplace in the department, suggesting an atmosphere hostile to the promotion of female officers. *See Ercegovich*, 154 F.3d at 356 ("[W]e do not view each discriminatory remark in

isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus.").

In addition to these discriminatory remarks, the record contains other evidence of a general atmosphere of discrimination in the Department. Risch testified that Lieutenant Foster, who occupied a senior position in the command staff,[5] discriminated against female officers in distributing work. When Foster distributed shift assignments, Risch testified, he gave males "any kind of detail that they wanted to do, and if the males didn't want to do it the females would get stuck doing it." ROA at 97 (Risch Dep. Tr. at 157-58). And when Foster distributed extra duties, according to Risch, he "gave all the plum assignments to the males" and offered males but not females "the opportunity to decide what kind of work they wanted to do that day." ROA at 96 (Risch Dep. Tr. at 76). We have explained that "management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered the decisionmaking process in another context." *Ercegovich*, 154 F.3d at 356.

In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male candidates promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual. *See Bender*, 455 F.3d at 626-27. Because a genuine issue of material fact exists as to whether Risch was denied a promotion because of her gender, summary judgment should not have been granted on Risch's gender-discrimination claim.

---

[5]The sixteen-person command staff includes four lieutenants, who report directly to the Deputy Chief of Police and are senior to sergeants.

### III.  CONCLUSION

For these reasons, we **REVERSE** the district court's grant of summary judgment to the Department on Risch's gender-discrimination claim and **REMAND** for further proceedings consistent with this opinion.

——————————

**DISSENT**

——————————

GRIFFIN, Circuit Judge, dissenting. I respectfully dissent. I would affirm the judgment of the district court.

Plaintiff Karyn Risch complains that the Royal Oak Police Department's denial of her promotion to detective in 2005 was based upon an unlawful reason – sex discrimination. However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In opposing a defendant's motion for summary judgment, the plaintiff must submit admissible evidence from which a reasonable juror could find that she has met her burden. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001); *see also Chen v. Dow Chemical Co.*, No. 08-1597, — F.3d — , 2009 U.S. App. LEXIS 20058, at *8 (6th Cir. Sept. 8, 2009); *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 371 (6th Cir. 2007). Because Risch has not done so, the district court properly granted defendant's motion for summary judgment.

I.

The majority concludes correctly that the Department articulated a legitimate, non-sex-based reason for denying her the promotion. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[1] Police Chief Theodore Quisenberry swore in his affidavit that he promoted officers based upon their "service and performance as demonstrated by their performance evaluations, test scores, initiative and leadership qualities" and that Risch was not among those he promoted "because the other officers in the eligibility list had better test scores, better performance evaluations and demonstrated more initiative and leadership qualities than [Risch]."

————————————————

[1]Risch does not allege direct evidence of unlawful discrimination, but relies upon the circumstantial, burden-shifting framework of *McDonnell Douglas*.

My colleagues also acknowledge that Chief Quisenberry's explanation rebuts the presumption of discrimination raised by the prima facie case of discrimination so that it "'drops from the case.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 255 & n.10).  In other words, the burden falls upon Risch, not upon the Department, to identify evidence from which a reasonable jury could find that Chief Quisenberry's reason was a lie contrived to conceal his true reason for denying her the promotion – that she is a woman. *See Burdine*, 450 U.S. at 253 ("[T]he plaintiff must then . . . prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.").  Because Risch cannot do so, her case requires dismissal. *See Chen*, 2009 U.S. App. LEXIS 20058, at *10; *Braithwaite*, 258 F.3d at 494-97; and *Macy*, 484 F.3d at 366-71.

Although the district court ruled that Risch failed to show that the Chief's explanation was a pretext for discrimination, the majority reverses the district court's judgment.  In support of its decision, the majority:  (1) characterizes Risch's qualifications as equal or "arguably superior" to two of the male candidates (Moore and Spencer) who were promoted to the detective position in 2005; (2) highlights the lack of women in command positions; and (3) finds persuasive the allegedly "discriminatory atmosphere" at the Department, specifically, sexist remarks purportedly made by non-decisionmaking male officers.

## II.

None of the grounds cited by the majority creates a triable question of fact on the issue of pretext.

In this regard, "'[t]he jury may not reject an employer's [nondiscriminatory] explanation . . . unless there is a sufficient basis *in the evidence* for doing so.'" *Upshaw v. Ford Motor Co.*, 576 F.3d. 576, 586 (6th Cir. 2009) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), abrogated in part on other grounds, *Gross v. FBL Fin. Servs., Inc.*, — U.S. — , 129 S. Ct. 2343, 2351-52, 174 L. Ed. 2d (2009)).  "To allow the jury simply to refuse to believe the employer's

explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit." *Manzer*, 29 F.3d at 1083 (citing *Burdine*, 450 U.S. at 254).

In opposing a properly supported motion for summary judgment, the plaintiff bears the burden of demonstrating pretext by submitting admissible evidence showing that the proffered reason:  (1) had no basis in fact, (2) did not actually motivate the defendant's action, or (3) was insufficient to motivate the defendant's action.  *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).

## A.

It is undisputed that the ultimate decision to promote officers was a discretionary one that rested exclusively with Chief Quisenberry.  Based upon the evidence before Chief Quisenberry, Risch's qualifications were not equal or "arguably superior" to the male candidates who were promoted, as the majority inaccurately asserts. In 2005, when Risch applied for the promotions, her performance and written evaluation scores were the lowest of *all three* of the male employees who were promoted.  Both scores constituted ninety percent of Risch's total score for ranking purposes.  Risch neither disputes the accuracy of her written examination score (seventy percent of her total score) nor complains that the examination was biased against women.  Indeed, if not for her seventeen-year employment experience with the Department (ten percent of her total score), Risch would have been ranked fifth, not third, on the 2005 eligibility list. Although the majority recounts other instances prior to 2005 in which Risch was denied promotions, it acknowledges that "she may recover only for the alleged discriminatory acts committed by the Department in 2005."  Moreover, those previous denials do not demonstrate a pattern of unlawful discrimination against Risch because she suffered from the same performance deficiencies in those years as she did in 2005.

Obviously, an employee's experience alone does not justify a promotion.  In fact, we recently held that a complaining employee's seniority, coupled with less favorable performance evaluations than newer employees, justified the employer's negative treatment of him.  *See Cameron v. State of Ohio (Dep't of Youth Servs.)*, No. 08-4403,

2009 U.S. App. LEXIS 19100, at *11 (6th Cir. Aug. 25, 2009) (unpublished) (stating that the employer "could have been less willing to forgive an employee's inability to complete reports in a timely fashion given extensive experience, than to forgive a similar deficiency in an employee just learning the ropes."). Contrary to Risch's assertion at oral argument, no employee should have a "legitimate expectation" of receiving a promotion merely because that employee's name appears on an *eligibility* list. Promotions are earned, not given. Title VII prevents unlawful discrimination; it does not mandate entitlement. *Cf. Meyer v. City of Joplin*, 281 F.3d 759, 760-62 (8th Cir. 2002) (affirming the district court's dismissal of a 42 U.S.C. § 1983 claim alleging that a city denied the plaintiff a "constitutionally protected property interest in a promotion to lieutenant" because, although the plaintiff's examination score and military service made him one of the top three candidates eligible for the promotion and "gave him a preference over the other two candidates if all other ratings were equal[,]" his "unilateral expectations of being promoted . . . were substantially diminished by the police chief's ability . . . to consider the candidate's more subjective qualifications" and the chief's discretion "to appoint any of the three qualified applicants[.]").

## B.

The lack of evidence demonstrating a history or a pattern of unlawful discrimination also undermines Risch's claim of pretext. The undisputed evidence shows that Chief Quisenberry promoted women officers during his tenure. In 2002, a year after he was hired and *before* this conflict arose, Chief Quisenberry promoted female Officer Lynne Barron to the rank of sergeant. Although Risch argues that Barron retired after serving one year in her elevated position and speculates that sexism was the reason for her departure, Risch revealingly did not depose Barron, and the evidence shows that Barron served as a sergeant for three years, not one year, before retiring. Moreover, Barron left because she received an early retirement buyout (a legitimate, non-sex-based economic incentive offered by many employers to their employees), hardly an aberration from the "[c]onsiderable" amount of turnover that normally occurred among all supervisory personnel within the Department. In 2003 or 2004,

Chief Quisenberry offered another female officer, Robin Stuart, a promotion to sergeant. However, Stuart declined the offer, which also was not unusual. Chief Quisenberry also promoted Officer Cynthia Hill to detective in 2007, while this lawsuit was pending.[2] In short, the Chief promoted women officers. Apart from herself, Risch identifies no female officer who applied for, and was denied, a promotion during Chief Quisenberry's tenure.

C.

Nor does the evidence support Risch's contention that her performance scores "began to plummet" with Chief Quisenberry's appointment. In fact, her scores started declining in 1998, three years before Chief Quisenberry was hired. Risch's scores fell from 91 in 1997 to 86 in 2000. When the Chief commenced his employment in 2001, the downward trend merely continued, with Risch's scores descending from 85 in 2001 to 81 in 2005. The four-point drop in Risch's score during the four-year period of 2001 to 2005 (coinciding with Chief Quisenberry's tenure) was *less* than the five-point decrease in the three years (1997 to 2000) preceding Chief Quisenberry's appointment. Far from permitting an inference of discrimination, this data demonstrates a consistent decline in Risch's performance ratings over a lengthy nine-year period, lending further support to the Department's performance-based reasons for denying her the promotion.

Notwithstanding the numbers themselves, mere variations in Risch's evaluations before and during Chief Quisenberry's employment are not evidence of unlawful discrimination. Police chiefs, like all upper management personnel, have vastly distinct management styles. For this reason, in the analogous context of determining whether the complaining employee is "similarly situated" to an employee outside the protected class such that an inference of discrimination may arise when both employees are treated differently, we have required that those employees "have dealt with the same supervisor" and "have been subject to the same standards[.]" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Risch's complaints about her negative evaluations

---

[2]The majority is selective regarding its recitation of inadmissible evidence.

are better explained by a combination of her own performance deficits and a possible change in management style than by a nebulous, allegedly invidious Department-wide plot to discriminate against her.[3]

D.

In reversing the district court's grant of summary judgment to the Department, the majority relies upon inadmissible, non-probative evidence. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (stating that Rule 56(e)(2) of the Federal Rules of Civil Procedure "leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial."). Risch testified in her deposition that Chief Quisenberry never made a sexist remark to her and conceded that no employee relayed any sexist comments to her by the Chief. The majority nevertheless concludes, based solely upon Risch's opinion and sheer speculation by other officers who lacked personal knowledge about Chief Quisenberry's actual decision-making process, that Risch may

---

[3] According to the published job announcement, the detective position required "independent judgment" and the abilities to follow directions and "establish and maintain effective working relationships with citizens, subordinates, peers and supervisors." Yet, during her employment with the Department, numerous supervisors, although praising Risch in several areas, also commented in their written evaluations of her performance that she was "unwilling[] to work as a team player[,]" "received a written reprimand for writing demeaning comments about a co-worker[,]" was "not very motivated and too vocal with her negative opinions of the department[,]" "need[ed] reminders to maintain acceptable levels of performance[,]" "received an oral reprimand for missing court[,]" was "[c]ounseled about padding her logs, low productivity, malingering about the station," had an "[u]nfortunate continued documented history of sub-par performance and articulation of unhappiness with [the Department,]" used "[o]ver average sick time use[,]" needed to "work on maintaining a neater appearance[,]" displayed a "negative attitude toward the department [that] prevents her from reaching her full potential[,]" and "was counseled . . . about making inappropriate comments in the dispatch center." Moreover, Risch's supervisors counseled her for tardiness, "display[ing] an unacceptable work ethic[,]" "uncooperativeness and bad attitude[,]" and "being at fault in [an] accident while driving . . . and not reporting it to [her] supervisor."

Numerous supervisors – ten in all – rotated every six months to review Risch's performance. Revealingly, Risch makes no attempt to dispute the particular facts underlying their negative appraisals of her and the counseling she received. These facts alone vitiate her claim of a Department-wide conspiracy to discriminate against her. *See, e.g., Spearmon v. Southwestern Bell Tel. Co.*, 662 F.2d 509, 512 (8th Cir. 1981) (no discrimination where "several supervisors" evaluated the plaintiff unfavorably); *Hairston v. AK Steel Corp.*, 162 F. App'x 505, 510 (6th Cir. 2006) (unpublished) (no cognizable claim of pretext where the plaintiff was repeatedly cited for performance failures and required numerous counseling sessions by several supervisors); *Evans v. Toys R Us Ohio, Inc.*, No. 99-3233, 2000 U.S. App. LEXIS 14076, at *27-28 (6th Cir. June 2, 2000) (unpublished) (rejecting plaintiff's argument that his poor performance reviews were motivated by his employer's "disdain for minorities and men" because "he was evaluated by several supervisors"). In fact, the evaluations, which comprised twenty percent of Risch's score for the short-list of candidates eligible for the promotion, were somehow good enough to place Risch on that list. Had Risch's supervisors harbored sex-based animus against her, they could have "fixed" her performance scores so as to render her ineligible for the promotions.

be a victim of sex discrimination.  However, our law is well-established that "rumors, conclusory allegations and subjective beliefs   . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."  *Mitchell,* 964 F.2d at 584-85 (numerous citations omitted).

Further, simply because some employees within the Department may have made sexist comments does not permit a reasonable inference that Chief Quisenberry's decision to deny Risch a promotion was sex-based.  *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) ("Unless the statements or conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct can not suffice to satisfy the plaintiff's burden of demonstrating animus.") (internal quotation marks, citation, and alterations omitted); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990) ("[A] statement by an intermediate level management official is not indicative of discrimination when the ultimate decision . . . is made by an upper level official.").  To be sure, sexist comments by other officers may have greater relevance if Risch were alleging sexual harassment, but she is not; rather, she alleges an unlawful *discrete* act – denial of a promotion based upon sex.  To impute allegedly discriminatory comments and conduct by non-decision making employees within the Department to Chief Quisenberry and conclude that discriminatory animus may have infected his denial of Risch's request for a promotion requires an inference upon inference – untethered to any proper evidentiary foundation.

Finally, the inadmissible gossip upon which the majority improperly relies is non-specific.  For example, while characterizing the "general tenure [sic]" and "a majority of the men" in the Department as sexist, Risch revealingly was unable to remember the names of the officers whom she claims said:  "women don't belong in law enforcement"; "the chief [will] never have a female in the command staff"; and "[n]one of you [female officers] will ever go anywhere[.]"  Moreover, Officer Teichow, who allegedly heard male Sergeant Kowalski make a "general statement" that was negative about women during a meeting to consider whether Risch and female Officer Kathy Szydiowski would be promoted to the Field Training Officer ("FTO") position, admitted

during his deposition that "[y]ou know what?  I honestly cannot recall 100 percent [Sergeant Kowalski] saying that the women are not going to be a part of this.  It was more inferring to those two [Risch and Szydiowski] are not going to be – those women, being the two of them, are not going to be part of the FTO program."  Significantly, that meeting followed Risch's removal from another program because of her "unwillingness to work as a team player[,]" and Officer Teichow was "certain that was brought up" at the meeting.  Further, Officer Teichow testified in his deposition that he neither heard Chief Quisenberry say he would never promote a woman to his command staff or anything similar nor did Officer Teichow himself believe that the Chief would exclude women from such a position.  In fact, Officer Teichow testified that "you know what? I don't know that I would say the Chief will never have a woman in the command. Sergeant Lynn Barron was a female and was promoted.  So to say that I believe that the Chief never would have one, it's not true."

### III.

Time and again we have emphasized that "'[o]ur role is to prevent unlawful hiring practices, not to act as a "super personnel department" that second guesses employers' business judgments.'" *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).  The majority's decision, based upon inadmissible opinion, speculation, and conjecture, contravenes that principle.  The district court correctly granted summary judgment in favor of the Department because no reasonable juror could find, based upon admissible evidence, that the Department's lawful reason for denying Risch a promotion in 2005 was a pretext for sex discrimination.  For this reason, I would affirm and therefore respectfully dissent.