GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
Balancing an employee’s right against illegal discrimination against the employer’s prerogative to make fundamental managerial decisions regarding whom to hire, fire, and promote is a central concern in employment discrimination cases. Our judicial duty requires us to reverse violations of the law, not to place a thumb on the scale in favor of a particular employment outcome. Indeed, we have cautioned our courts against adopting the “illegitimate role of acting as ... ‘super personnel departments],’ ” when attempting to strike this balance. Bender v. Hecht’s Dept Stores, 455 F.3d 612, 627 (6th Cir.2006) (citation omitted). In my view, the majority crosses this line by impermissibly “overseeing and second guessing [the] employer's] business decisions.” Id. Accordingly, I respectfully concur in part and dissent in part. I would affirm the summary judgment granted in favor of the attorney general on all claims.
I.
First, turning to plaintiffs 2009 failure-to-promote claim, I disagree with the majority that plaintiff has shown pretext based on her “plainly” superior qualifications. The leading Sixth Circuit case addressing qualifications evidence in employment is Bender v. Hecht’s Department Stores. Bender was decided shortly after Ash v. Tyson Foods, Inc., 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). In Ash, the Supreme Court addressed the Eleventh Circuit’s standard that “[pjretext can be established through comparing qualifications only when the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face.” Id. at 456-57, 126 S.Ct. 1195 (emphasis added; citation omitted). The Court rejected this formulation, noting that it had previously held, in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that an employer misjudging an applicant’s qualifications “may be probative” of whether the employer’s reasons for the employment decision were pretext for discrimination. Id. at 457, 126 S.Ct. 1195. Accordingly, the Ash Court held that “qualifications evidence may suffice, at least in some circumstances, to show pretext.” Id. However, the Court declined to “define more precisely what standard should govern pretext claims *493 based on superior qualifications.” Id. at 458, 126 S.Ct. 1195.
Bender addressed a relative-qualifications pretext claim post-Ash. Our court in Bender explained that “acknowledging that evidence of comparative qualifications ‘may be probative’ of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive.” Bender, 455 F.3d at 626. Bender thus explained what was required of a plaintiff in a relative-qualifications case:
Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiffs claim surviving summary judgment. On the other hand, in the ease in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant’s qualifications must be so significantly better than the successful applicant’s qualifications that no reasonable employer would have chosen the latter applicant over the- former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself to raise a genuine issue of fact that the employer’s proffed legitimate, non-discriminatory rationale was pretextual.
Id. at 626-27 (citation omitted; emphasis added). See also id. at 627 (“[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer’s explanation.”).
In other words, a plaintiff may demonstrate pretext based on qualifications evidence using one of two methods: (1) by showing that she was so significantly more qualified than the other candidate that no reasonable employer would have chosen the other candidate (in which case other evidence of discrimination is not required); or (2) by showing that she was as qualified or slightly more qualified than the other candidate (in which case other evidence of discrimination is required).
Here, plaintiff Susan Philbrick argues that her “qualifications superiority was significant enough to alone” demonstrate pretext. In addition, she contends that the record contains sufficient “other evidence” demonstrating illegal discrimination. The majority appears to accept both arguments, holding that plaintiff prevails under the “so significantly better” standard and also under the “other evidence” approach. I respectfully disagree.
First, the evidence does not show that Philbrick’s qualifications were “so significantly better than [Robinson’s] qualifications that no reasonable employer would have chosen” her over Robinson. Bender, 455 F.3d at 627. Curiously, the majority concedes that Robinson had a “broader overall range of experience” than Phil-brick, yet simultaneously holds that plaintiff was the “plainly superior candidate.” I agree with the majority that Robinson had a broader range of experience than plaintiff — it is precisely for this reason that I disagree with the majority’s conclusion. Philbrick’s and Robinson’s relative employment histories demonstrate that each had significant experience. For .example, although Robinson had worked for the Marshals Service for eight fewer years than plaintiff, Robinson had nonetheless worked for the Marshals Service for twelve *494 years — hardly an insignificant amount of time. Although the majority accepts that plaintiff had significantly more supervisory experience than Robinson, this is not altogether clear, as career board member Fernando Karl testified that Robinson’s and plaintiffs “overall managerial experience ... was fairly equal.”
r Moreover, even assuming that Philbriek had more supervisory experience than Robinson and, having worked there for some time, had more ties to the particular district, Robinson had a wider breadth of experiences. For example, Robinson had worked as a supervisor in a sub-office, whereas plaintiff had not. Robinson worked with the Deputy Attorney General, whereas plaintiff did not. Robinson had experience working at headquarters; plaintiff did not. He had assisted in the recovery efforts following the September 11, 2001, terrorist attacks; plaintiff did not. Also, Robinson was fluent in Spanish, whereas plaintiffs resume listed no special language skills. Robinson had experience working as a contract officer technical representative (COTR), managing a $2.8 million contract, whereas plaintiff had no COTR experience and did not indicate on her resume that she had managed any large budget amount. Furthermore, Robinson had a top secret clearance; plaintiff did not. Finally, Robinson had worked in five different offices: Fort Lauderdale, Miami, Arlington, Washington, and New York City. By contrast, Philbriek had worked only in Michigan.
Importantly, Philbriek concedes that Robinson’s interview scores were “significantly higher” than hers. Indeed, Robinson had five “strong” interview ratings and three “average,” whereas plaintiff had three “weak” interview ratings and five “average.” Regarding this consideration, Robinson was clearly the superior candidate. As every employer knows, personal one-on-one interviews are a crucial part of the hiring process. While the scoring of an interview is largely subjective, the significance of the human interaction between a supervisor and prospective employee should not be discounted. Effective and productive interpersonal relationships are important in many positions, including the Marshals Service.
Finally, although the majority makes much of the fact that Philbrick’s composite merit promotion scores were higher than Robinson’s, this fact is immaterial because no one with decisionmaker authority was aware of those scores.
Based on this record, I conclude that Philbrick’s qualifications were not “so significantly better” than Robinson’s that it would have been unreasonable for the Marshals Service to select Robinson over her. This is not to say that plaintiff was unqualified. Indeed, a reasonable émployer could easily have concluded that Phil-brick was the better candidate for the position. However, absent illegal discrimination, this is the employer’s prerogative. As we held in Bender, “[i]f two reasonable decisionmakers could consider the candidates’ qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate’s qualifications are not significantly better than the other’s.” Bender, 455 F.3d at 628.
Becausé I agree with the district court’s ruling that Philbriek was only “as qualified or marginally more qualified” than Robinson, the next inquiry is whether the record contains the additional requirement of “other probative evidence of discrimination.” Id. at 626, 627. Philbriek and the majority rely on several facts as “other probative evidence of discrimination,” including: (1) that the Marshal’s recommendation is “usually” followed by the career board and the director; (2) that Presenter Fagan admitted to overlooking plaintiffs *495 supervisory experience; and (3) characterizing Marshal Grubbs’ assessment of plaintiffs credentials as flawed. But, this is not evidence of illegal discrimination. Rather, this evidence relates to Philbrick’s qualifications or the hiring process. This is qualifications evidence, repurposed by plaintiff as evidence of discrimination. In other words, plaintiff attempts to use qualifications evidence in two ways: both as evidence of her qualifications, and as evidence of discrimination. Our case law requires more.
Specifically, we require “other ” evidence of discrimination, beyond evidence merely probative of plaintiffs qualifications or the process of hiring. For example, in Risch v. Royal Oak Police Department, 581 F.3d 383, 392-93 (6th Cir.2009), this court found pretext where the female plaintiff was roughly as qualified as the ultimately-promoted male candidate and where the plaintiffs coworkers made statements related to her gender. Similarly, in Bartlett v. Gates, 421 Fed.Appx. 485, 491-92 (6th Cir.2010), the plaintiff presented evidence that he was as qualified as the selected candidate, and that his superiors had made discriminatory remarks. In Bartlett, we concluded that the discriminatory remarks, when combined with the plaintiffs qualifications evidence, were enough to survive summary judgment. Id. In contrast, Phil-brick cites no authority in which this court has repackaged qualifications evidence and deemed it sufficient as “other probative evidence of discrimination.”
In my view, this record is devoid of “other evidence of discrimination” similar to those found in other cases. In this regard, plaintiff points to no discriminatory remarks from her supervisors or coworkers regarding her sex. Nor is there any other additional evidence of discrimination from which a factfinder could infer that Robinson was selected because of an impermissible bias against plaintiff based on her sex. The inference of sex discrimination that Philbrick claims lacks any evi-dentiary support and, in my view, is based solely on speculation and conjecture.
In conclusion, on this record, there is insufficient direct or circumstantial evidence from which a reasonable jury could conclude that the presenter, career board, or director intentionally discriminated against Susan Philbrick because of her sex. As the Supreme Court has held, the “ultimate question” in employment discrimination cases is whether the plaintiff was the “victim of intentional discrimination.” Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Plaintiff failed to present sufficient evidence to answer that question in the affirmative. In this case, which the majority concedes is a “close call,” my colleagues have assumed the role of a super personnel committee by second-guessing a legitimate personnel decision of the Marshals Service. For these reasons, I respectfully dissent regarding plaintiffs sex discrimination claim.
II.
I also dissent from the majority’s conclusion regarding plaintiffs 2011 Title VII retaliation claim.
The elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish a prima facie case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was “materially adverse” to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.
*496 Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir.2014) (quotation marks omitted). “Title VII retaliation claims ‘must be proved according to traditional principles of but-for causation,’ which ‘requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.’ ” Id. at 731 (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2014)).
I agree with the majority that the dis-positive issue is causation. The parties and the majority make much of the “temporal proximity” aspect of causation, discussing whether the five weeks — or six months, depending on where the line is drawn— between the EEOC action and the hiring decision was sufficient to establish causation. In my judgment, this line of reasoning is immaterial because plaintiff cannot establish causation.
To prove causation, plaintiff must demonstrate that but for her EEOC complaint, she would have been promoted instead of the ultimately successful candidate. Assuming arguendo plaintiffs position that the career board and director would have rubber-stamped whichever candidate Marshal Grubbs ranked first among applicants, Philbrick must still show that she should have been ranked first but for her EEOC complaint. She does not do so. Plaintiff makes much of the fact that she was initially ranked third behind the less-qualified Candidate 85 and that Grubbs subsequently revised his rankings, placing plaintiff second. But it does not follow from the fact that Grubbs revised his rankings making plaintiff second that he would have ranked her first but for her EEOC complaint. Accordingly, the fact that Grubbs revised his rankings does nothing to answer whether plaintiff would have been promoted but for her EEOC complaint. Indeed, plaintiff was never ranked first. Nor does plaintiff argue that she should have been ranked first — although she argues that she was “overwhelmingly superior[]” to Candidate 85, she never appears to dispute that Jankow-ski was a qualified candidate for the job.[1] Instead, she requests that we do her work for her, suggesting that Grubbs’ revision in rankings was indicative of some wrongdoing in a vague sense, leaving it to us to fill in the blanks with, a finding of illegal discrimination. But it is plaintiffs burden to establish that her protected activity was the but-for cause of the adverse employment action against her, and absent evidence or a reasonable inference that she would have been ranked first except for her EEOC complaint, I cannot conclude that plaintiff has met that burden.
III.
For these reasons, I respectfully concur in part and dissent in part. I would affirm the judgment of the district court. ■

. For example, plaintiff argues that "[t]he question not addressed by the District Court which the jury was prevented from answering, is why would Grubbs ... rank Candidate 85 ... above [plaintiff ?]” This illustrates perfectly plaintiffs and the majority’s specious reasoning. Where plaintiff ranked relative to Candidate 85 is immaterial. What matters for purposes of establishing but-for causation is where plaintiff ranked relative to Jankow-ski, the top-ranked candidate.